DECKER v ROCHOWIAK

Docket Nos. 284155, 285870, and 290633. Submitted January 6, 2010, at Lansing. Decided March 30, 2010, at 9:05 a.m.

Eric Decker, a minor, by his next friend, Robin Decker, brought a medical malpractice action in the Montcalm Circuit Court against Michael Rochowiak, D.O., Alberto Betancourt, M.D., Carson City Hospital, doing business as Center for Women's Health Care, and Carson City Hospital, Inc. (the Carson City defendants), and Michael Stoiko, M.D., and Spectrum Health Hospitals, Inc., doing business as Butterworth Hospital and DeVos Children's Hospital (the Spectrum defendants). Plaintiff alleged that defendants committed malpractice during the care and treatment of plaintiff following his birth at Carson City Hospital. On September 23, 2004, plaintiff served his notice of intent (NOI) to commence the action on defendants. On June 5, 2006, plaintiff filed his action with supporting affidavits of merit. On January 9, 2008, plaintiff moved to file an amended complaint. The trial court, Charles H. Miel, J., granted the motion. Plaintiff thereafter served on defendants a supplemental NOI. A written order granting the motion was entered on February 19, 2008, and plaintiff filed the amended complaint on February 28, 2008. The Spectrum defendants (Docket No. 284155) sought leave to appeal the February 19, 2008, order and also sought in the trial court partial summary disposition of the 17 new allegations regarding the specific ways in which the Spectrum defendants breached the applicable standards of care raised in plaintiff's amended complaint. The trial court denied the motion for summary disposition on May 19, 2008. The Spectrum defendants (Docket No. 285870) sought leave to appeal the May 19, 2008, order. The Court of Appeals granted the Spectrum defendants' applications for leave to appeal and consolidated the appeals in unpublished orders entered September 8, 2008, amended September 18, 2008 (Docket Nos. 284155 and 285870). While the applications for leave to appeal were pending, the Spectrum defendants again moved for summary disposition in the trial court with regard to all of plaintiff's claims. The Carson City defendants joined the motion in part. The trial court denied the motions and entered an order on February 9, 2009, denying the Spectrum defendants' motion for summary disposition. On March

2, 2009, the Spectrum defendants (Docket No. 290633) sought leave to appeal the February 9, 2009, order. The Court of Appeals granted leave to appeal and consolidated the appeal in Docket No. 290633 with the appeals in Docket Nos. 284155 and 285870 in an unpublished order entered May 5, 2009. The Carson City defendants filed in the Court of Appeals a cross-appeal on May 26, 2009. On June 4, 2009, the trial court entered an order denying the Carson City defendants' prior motion for joinder and concurrence in the Spectrum defendants' motion for summary disposition.

The Court of Appeals *held*:

1. The trial court did not err by denying the Spectrum defendants' motion for partial summary disposition regarding the 17 new allegations raised in the amended complaint. Plaintiff's amended complaint did not assert any new potential causes of injury but instead alleged 17 specific ways in which defendants breached the applicable standards of care. Plaintiff's NOI clearly provided the Spectrum defendants adequate notice of the claims against them. The allegations in the amended complaint merely set forth more specific details, clarifying plaintiff's claims against the Spectrum defendants. Plaintiff did make a good-faith effort to identify and provide notice of the new allegations of how the standards of care were breached.

2. Plaintiff was required under the facts of this case to provide the statutory NOI before he commenced his lawsuit and did provide such notice. Plaintiff was not required to file a second NOI where the amended complaint did not name any new defendants or set forth any new potential causes of injury and where the action had already been commenced by the filing of the original complaint.

3. The trial court did not abuse its discretion by granting plaintiff's motion to amend his complaint.

4. The NOI contained a sufficient statement of causation regarding the manner in which it was alleged that defendants' breach of the standards of practice or care was the proximate cause of the injuries claimed in the notice. The trial court properly denied defendants' motion for summary disposition with regard to the sufficiency of the NOI.

5. Plaintiff's expert witness with regard to the malpractice claims against the defendants' nurses applied the proper standard of care with regard to those claims. The expert recognized that, with regard to the procedures at issue, the same standard of care applied locally and nationally. The expert also demonstrated her familiarity with the standard of care in a community similar to the community in which the defendants' nurses practiced.

6. The claims did not merely allege the nurses' failure to chart their communications with other medical providers but also alleged the level of communication that should have existed. The trial court properly denied defendants' motion for summary disposition that alleged that the nurses were not obligated by hospital policy to document their verbal communications with the physicians who were providing care to plaintiff.

Affirmed and remanded.

1. ACTIONS — MEDICAL MALPRACTICE — PLEADING — AMENDMENT OF PLEADINGS — NOTICE OF INTENT TO COMMENCE AN ACTION.

A plaintiff in a medical malpractice action must provide the statutorily required notice of intent to file the action not less than 182 days before the action is commenced; a plaintiff who has complied with such requirement and thereafter files a complaint to commence the action is not required to file a second notice of intent when the plaintiff is then permitted to file an amended complaint that does not name new defendant parties or set forth new potential causes of injury but merely clarifies the plaintiff's claims against the defendants (MCL 600.2912b).

2. WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE — STANDARDS OF CARE.

A party offering the testimony of an expert witness in a medical malpractice action must demonstrate the witness' knowledge of the applicable standard of care; a nonlocal expert may testify if the expert demonstrates a familiarity with the standard of care in an area similar to the community in which the defendant practiced.

3. ACTIONS — MEDICAL MALPRACTICE — NURSES — STANDARDS OF CARE.

Nurses do not engage in the practice of medicine although they are licensed healthcare professionals; the common-law standard of care applicable to malpractice actions against nurses is the skill and care ordinarily possessed and exercised by practitioners of the profession in the same or similar localities.

*Mark Granzotto, P.C.* (by *Mark Granzotto*), and *Turner & Turner, P.C.* (by *Matthew L. Turner*), for Eric Decker.

*Johnson & Wyngaarden, P.C.* (by *David R. Johnson* and *Michael L. Van Erp*), for Michael Rochowiak, D.O., Alberto Betancourt, M.D., Carson City Hospital, and Carson City Hospital, Inc.

*Smith Haughey Rice & Roegge* (by *William L. Henn* and *Carol D. Carlson*) for Michael Stoiko, M.D., and Spectrum Health Hospitals, Inc.

Before: CAVANAGH, P.J., and FITZGERALD and SHAPIRO, JJ.

CAVANAGH, P.J. In Docket Nos. 284155 and 285870, defendants Michael Stoiko, M.D., Spectrum Health Hospitals, Inc., doing business as Butterworth Hospital, and Spectrum Health Hospitals, Inc., doing business as DeVos Children's Hospital (the Spectrum defendants), appeal by leave granted an order granting plaintiff, Eric Decker, a minor, by his next friend Robin Decker, leave to amend his medical malpractice complaint, and an order denying the Spectrum defendants' motion for partial summary disposition with regard to those claims added by amendment. We affirm.

In Docket No. 290633, the Spectrum defendants appeal by leave granted an order denying their motion for summary disposition that challenged the sufficiency of plaintiff's notice of intent (NOI) and the expert support for plaintiff's nursing malpractice claims. Also in Docket No. 290633, defendants Michael Rochowiak, D.O., Alberto Betancourt, M.D., Carson City Hospital, doing business as Center for Women's Health Care, and Carson City Hospital, Inc. (the Carson City defendants), challenge on cross-appeal an order denying their motion for joinder and concurrence in the Spectrum defendants' motion for summary disposition with regard to the sufficiency of plaintiff's NOI. We affirm.

These consolidated interlocutory appeals arise out of defendants' care and treatment of plaintiff, Eric Decker (Eric), who was born on July 17, 1996, at defendant Carson City Hospital. Plaintiff has averred that he was born by vacuum delivery necessitated by fetal distress.

He was not seen by a pediatrician. Although his bilirubin was elevated and he started becoming reluctant to feed, Eric was discharged the next day, on July 18, 1996.

On July 19, 1996, Eric was taken back to Carson City Hospital because he was lethargic and reluctant to feed. After being diagnosed with persistent hypoglycemia and jaundice caused by an elevated bilirubin level, he was airlifted to DeVos Children's Hospital on Spectrum Health's Butterworth Campus for medical management in the pediatric intensive care unit (PICU). Upon arrival, it was determined that Eric was profoundly hypoglycemic with a critically low glucose level of 4 mg/dl, where an acceptable range appears to be 60 to 100 mg/dl. A subclavian venous catheter was inserted to infuse glucose solutions. Although his blood glucose level increased somewhat for a short period, it remained dangerously low. Seizure activity was noted.

A brain CT scan performed on July 20, 1996, revealed an extensive hypoxic ischemic brain injury and hemorrhages. Eric's condition continued to deteriorate, culminating in a cardiac arrest. During the resuscitation efforts, it was determined that the subclavian venous catheter was not in the vein. Thus, the fluid that had been infused through it did not go into Eric's bloodstream, but into his chest cavity. The large amount of fluid in Eric's chest cavity interfered with the ability of Eric's heart to beat—a condition known as cardiac tamponade—which led to his cardiopulmonary arrest. After a functioning femoral vein catheter was placed, Eric's condition stabilized. He remained hospitalized through September 2, 1996. Eric has been diagnosed with cerebral palsy from an early anoxic (lack of oxygen) brain injury. He is developmentally delayed, suffers from sensory deficits, and is legally blind.

On September 23, 2004, plaintiff served his NOI on defendants as required by MCL 600.2912b, and on June 5, 2006, he filed his medical malpractice case with supporting affidavits of merit. On January 9, 2008, plaintiff moved for leave to file an amended complaint that alleged 17 specific ways in which the Spectrum defendants breached the applicable standards of care. Plaintiff argued that the amendment was proper because (1) discovery remained open and experts had not been deposed, (2) the amendment merely clarified allegations and issues and was made possible after particular information was learned through the discovery process, (3) the clarifications "ultimately relate[] back to the underlying lynch pin of this entire case which is that they did not appropriately monitor and maintain this baby's glucose level," and (4) defendants would not be prejudiced by the amendment.

The Spectrum defendants opposed plaintiff's motion to amend, arguing that (1) plaintiff had not shown why "justice" required that leave be granted under MCR 2.118(A)(2) in light of the inexcusable delay in bringing such claims that were discernable from their inception; (2) plaintiff failed to raise these new theories in the NOI as required by MCL 600.2912b, thus such claims were barred by the statute of limitations; and (3) defendants would be unduly prejudiced if plaintiff were allowed to amend the complaint to add these new allegations. Oral arguments were heard on January 31, 2008. The trial court agreed with plaintiff's arguments, and granted plaintiff's motion for leave to file an amended complaint. Thereafter, plaintiff served on defendants a supplemental NOI containing the additional allegations. A written order granting plaintiff's motion was entered on February 19, 2008, and plaintiff filed the amended complaint on February 28, 2008. On March 11, 2008, under Docket No. 284155, the Spectrum

defendants filed with this Court their application for leave to appeal the trial court's February 19, 2008, order.

On April 8, 2008, the Spectrum defendants moved for partial summary disposition, seeking dismissal of the 17 allegations raised in plaintiff's amended complaint. Defendants essentially reiterated the arguments they made in opposition to plaintiff's motion to amend, including that the specific allegations were not identified in the NOI and were barred from being added to this lawsuit by the expiration of the period of limitations. Defendants also contested the fact that plaintiff did not wait 182 days after serving the supplemental NOI before filing the amended complaint. The trial court heard oral arguments on April 24, 2008, and agreed with plaintiff's arguments. An order denying defendants' motion was entered on May 19, 2008. On June 9, 2008, under Docket No. 285870, the Spectrum defendants filed with this Court their application for leave to appeal the trial court's May 19, 2008, order.

On September 8, 2008, this Court granted the Spectrum defendants' applications for leave to appeal in Docket Nos. 284155 and 285870, and the appeals were administratively consolidated. See *Decker v Rochowiak*, unpublished order of the Court of Appeals, entered September 8, 2008 (Docket No. 284155), amended September 18, 2008; *Decker v Rochowiak*, unpublished order of the Court of Appeals, entered September 8, 2008 (Docket No. 285870), amended September 18, 2008.

On November 26, 2008, while Docket Nos. 284155 and 285870 were pending on appeal, the Spectrum defendants again moved for summary disposition in the trial court. They moved for summary dismissal as to all of plaintiff's claims, arguing that plaintiff's initial NOI

failed to contain a statement of proximate cause detailing the manner in which defendants' alleged negligence resulted in plaintiff's injuries as required by MCL 600.2912b(4)(e). The Spectrum defendants also moved for summary disposition as to plaintiff's nursing malpractice claims. They asserted that (1) plaintiff's only expert witness could not testify because she improperly relied upon a national, rather than local, standard of care with regard to these claims, and (2) plaintiff's expert was not qualified to testify in support of plaintiff's negligent charting claims. The Carson City defendants joined the motion for summary disposition, challenging the sufficiency of the statement of causation in plaintiff's NOI. Plaintiff opposed the motions.

On December 19, 2008, oral arguments were held. The trial court rejected defendants' claims that plaintiff's NOI was deficient, holding that "reading it in its entirety it describes the manner in which the various breaches of standard of care were the proximate cause of the injuries and I'll also adopt by reference the arguments of [plaintiff's counsel] and his brief in connection with that." The court also rejected the Spectrum defendants' challenge to plaintiff's nursing malpractice claims, holding that the expert seemed to testify that the national standard of care and the local standard of care were the same and, with regard to the charting claim, "the standard of care determines what the nurses should do, not whether the hospital form provides for it." After noting that it was adopting the arguments and brief of plaintiff, the trial court denied defendants' motions. On February 9, 2009, an order denying the Spectrum defendants' motion for summary disposition was entered.

On March 2, 2009, under Docket No. 290633, the Spectrum defendants filed with this Court their appli-

cation for leave to appeal the trial court's February 9, 2009, order. On May 5, 2009, this Court granted the Spectrum defendants' application for leave to appeal, and administratively consolidated the appeal with Docket Nos. 284155 and 285870. See *Decker v Rochowiak*, unpublished order of the Court of Appeals, entered May 5, 2009 (Docket No. 290633). On May 26, 2009, the Carson City defendants filed with this Court their claim of cross-appeal. On June 4, 2009, the trial court entered an order denying the Carson City defendants' motion for joinder and concurrence in the Spectrum defendants' motion for summary disposition with regard to the sufficiency of plaintiff's NOI.

### I. DOCKET NOS. 284155 AND 285870

The Spectrum defendants argue that the trial court erred by denying their motion for partial summary disposition as to 17 "new" allegations raised in plaintiff's first amended complaint. More specifically, defendants argue that these allegations should have been dismissed because they were not raised in plaintiff's NOI and are barred by the statute of limitations. We disagree.

We review de novo the grant or denial of a motion for summary disposition. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004). Likewise, issues of court rule and statutory interpretation, as well as whether a statute of limitations bars a claim, are reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008); *Farley v Advanced Cardiovascular Health Specialists, PC*, 266 Mich App 566, 570-571; 703 NW2d 115 (2005).

A medical malpractice action cannot be filed until a plaintiff complies with MCL 600.2912b, which provides:

(1) Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.

* * *

(4) The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:

(a) The factual basis for the claim.

(b) The applicable standard of practice or care alleged by the claimant.

(c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.

(d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.

(e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.

(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

The purpose of the notice requirement was explained in *Neal v Oakwood Hosp Corp*, 226 Mich App 701; 575 NW2d 68 (1997), as follows:

The purpose of the notice requirement is to promote settlement without the need for formal litigation and reduce the cost of medical malpractice litigation while still providing compensation for meritorious medical malpractice claims that might otherwise be precluded from recovery because of litigation costs. [*Id.* at 705, citing Senate

Legislative Analysis, SB 270, August 11, 1993; House
Legislative Analysis, HB 4403-4406, March 22, 1993.]

See, also, *Bush v Shabahang*, 484 Mich 156, 174; 772
NW2d 272 (2009). Once notice is given in compliance
with MCL 600.2912b, the two-year limitations period is
tolled during the notice period. MCL 600.5856(c). But a
medical malpractice plaintiff has the burden of showing
compliance with the requirements of MCL 600.2912b in
order to toll the statute of limitations. *Roberts v
Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679,
686, 691; 684 NW2d 711 (2004).

Here, the Spectrum defendants argue that plaintiff's
NOI did not include 17 specific allegations that plaintiff
raised in his first amended complaint; thus, those
"theories of malpractice liability that are not encom-
passed within [his] NOI" should have been summarily
dismissed. We disagree.

The NOI, examined as a whole, must advise "poten-
tial malpractice defendants of the basis of the claims
against them." *Id.* at 696 n 14; *Boodt v Borgess Med Ctr*,
272 Mich App 621, 628, 630; 728 NW2d 471 (2006),
rev'd in part on other grounds 481 Mich 558, 564
(2008). However, because the NOI comes at an early
stage of the malpractice proceeding, the plaintiff does
not have to craft the notice "with omniscience." *Roberts
(After Remand)*, 470 Mich at 691. Rather, the plaintiff
must "make good-faith averments that provide details
that are *responsive* to the information sought by the
statute and that are as *particularized* as is consistent
with the early notice stage of the proceedings." *Id.* at
701 (emphasis in original). The NOI must "set forth
allegations in good faith, in a manner that is responsive
to the specific queries posed by the statute, and with
enough detail to allow the potential defendants to

understand the claimed basis of the impending malpractice action . . . ." *Id.* at 691 n 7.

Considered as a whole, plaintiff's NOI clearly set forth as the claimed basis of plaintiff's impending malpractice action against the Spectrum defendants their alleged failure to properly care for, evaluate, treat, and monitor Eric's hypoglycemic condition, including by the proper and timely administration of the necessary glucose solutions through a properly placed central venous line. The NOI also asserted that the hospital, as well as the registered nurses and the physicians who were involved in Eric's medical management, were liable for Eric's resulting injuries. Contrary to the Spectrum defendants' argument, plaintiff's subsequently filed amended complaint did not assert any "new" potential causes of injury.

More specifically, with regard to the registered nurses, plaintiff's NOI set forth, in ¶ C(j), (k), (*l*), (m), (n), (q), and (r), their alleged failures to (1) properly monitor Eric's glucose levels and the status of the central line in light of his medical history and condition, (2) provide the necessary care to Eric, (3) timely and completely record, apprise, and report to physicians and other providers with regard to Eric's condition, and (4) seek consultations with, or provide referrals to, qualified specialists. The contested claims in plaintiff's amended complaint with regard to the nurses, as set forth in ¶ 42(*ll*), (mm), (nn), (oo), (pp), (qq), (rr), (ss), and (tt), included failures to (1) check Eric's blood sugar between 1:13 p.m. and 4:01 p.m. in violation of an order that it be checked every hour, (2) administer glucagon, potassium, and a bolus of glucose in a timely manner and/or as ordered, (3) timely report to physicians Eric's changed and decreased heart rate, respiratory rate, and oxygen saturation, (4) timely report problems with the

central line and Eric's seizure activity, (5) execute a change from dextrose to D-25 as ordered, and (6) timely report a drop in blood sugar on July 20, from 90 at 4:00 a.m. to 48 at 5:07 a.m. to 37 at 5:50 a.m. Plaintiff's NOI clearly provided the Spectrum defendants with adequate notice of the basis of his claims against the registered nurses involved in Eric's medical management.

With regard to the physicians who were involved in Eric's medical management, plaintiff's NOI set forth, in ¶ C(a), (c), (d), (e), (f), (h), (i), (*l*), (m), (n), (r), (t), (u), (z), and (aa), their alleged failures to (1) properly place the central line and verify its placement as well as continued function, (2) properly monitor Eric's glucose levels and the status of the central line in light of his medical history and condition, (3) conduct proper, complete, and necessary examinations and diagnostic tests, (4) properly and timely observe, diagnose, and treat his medical conditions, (5) seek consultations with, or provide referrals to, qualified specialists, (6) timely and completely record, apprise, and report to other treating physicians regarding Eric's condition, and (7) supervise, advise, and/or instruct nonphysician personnel. The contested claims in plaintiff's amended complaint with regard to the physicians, as set forth in ¶ 42(dd), (ee), (ff), (gg), (hh), (ii), (jj), and (kk), included failures to (1) immediately treat Eric's hypoglycemic condition with intravenous fluids, including dextrose solutions, (2) properly place the central line, (3) verify the central line's placement and continued function, particularly in light of Eric's declining condition and the diagnostic results, (4) properly and timely respond to the problems the registered nurses were experiencing with the central line, and (5) properly and timely respond to and treat the decreases in Eric's blood sugar. Again, plaintiff's NOI clearly provided the Spectrum defendants with

adequate notice of these claims against the physicians involved in Eric's medical management. And, as the trial court noted, the allegations in plaintiff's amended complaint merely set forth more specific details, clarifying plaintiff's claims against the Spectrum defendants, including the registered nurses and physicians involved in Eric's medical management.

In support of their claim that plaintiff's amended complaint asserted new "theories of malpractice liability" that should have been summarily dismissed for lack of notice, defendants rely on *Gulley-Reaves v Baciewicz*, 260 Mich App 478; 679 NW2d 98 (2004). That reliance is misplaced because the facts in *Gulley-Reaves* are clearly distinguishable. In that case, the plaintiff's NOI set forth as the basis of her claim a particular surgical procedure that resulted in damage to her vocal cords which "likely occurred because of the inexperience of the medical students or resident, who actually performed the procedure." *Id.* at 480. However, when the plaintiff filed her complaint, she included claims based on the anesthesia that was administered during the surgery. *Id.* at 481. A motion for summary disposition premised on the failure to comply with MCL 600.2912b with respect to the anesthesia claim was denied. *Id.* at 484. This Court reversed, holding that "the notice did not set forth the minimal requirements to identify that the anesthesia was a potential cause of plaintiff's injury." *Id.* at 487. Further, in light of the purpose of the notice requirement to promote settlement without the need for formal litigation, "[d]efendant hospital was not given the opportunity to engage in any type of settlement negotiation with regard to the anesthesia claims because it was not given notice of the existence of any such claim." *Id.* at 488.

In the case before us, the basis of plaintiff's claim was that the Spectrum defendants failed to properly care for, evaluate, treat, and monitor Eric's hypoglycemic condition, including by the proper and timely administration of the necessary glucose solutions through a properly placed central venous line. Unlike the plaintiff in *Gulley-Reaves*, plaintiff's amended complaint did not allege any other potential cause of Eric's injury. The basis of plaintiff's claims against the Spectrum defendants was their failure to properly care for, evaluate, treat, and monitor Eric's hypoglycemic condition, including by the proper and timely administration of the necessary glucose solutions through a properly placed central venous line. Thus, the purpose of the notice requirement was realized—the Spectrum defendants were given the opportunity to engage in settlement negotiations with regard to these claims because they were given notice of the same claims. Accordingly, the trial court properly denied the Spectrum defendants' motion for summary disposition as to the contested allegations raised in plaintiff's first amended complaint.

For the same reasons, we reject the Spectrum defendants' argument that plaintiff did not make a good-faith effort to identify and provide notice of the "new" allegations of malpractice. The basis of the claims against these defendants did not change. The allegations in the amended complaint merely clarified with more specificity the manner in which the standards of care were breached, which could be discerned more clearly with the aid of the discovery process. This is not a case where, as in *Gulley-Reaves*, the plaintiff set forth a totally new and different potential cause of injury in an amended complaint compared to the potential cause of injury set forth in her NOI, e.g., the manner in which

a particular surgical procedure was performed compared to the manner in which anesthesia was administered during the surgery.

Further, the Spectrum defendants' argument that plaintiff's amended complaint should have been dismissed because it was filed before the 182-day waiting period set forth in MCL 600.2912b(1) had expired is without merit. The amended complaint did not name new defendant parties, MCL 600.2912b(3), and it did not set forth any new potential causes of injury. Thus, plaintiff was only required under MCL 600.2912b(1) to provide the statutory notice before he *commenced* his lawsuit against these same defendants and it is undisputed that the requisite notice was provided. Plaintiff was not required to file a second NOI with regard to these defendants after he was granted leave to file his amended complaint, a complaint that merely clarified plaintiff's claims against the Spectrum defendants. The purpose of the notice requirement—to promote settlement without the need for formal litigation—cannot be realized when the litigation has already been commenced. See *Neal*, 226 Mich App at 705.

Next, the Spectrum defendants argue that plaintiff should not have been granted leave to amend his complaint. We disagree. "This Court reviews a trial court's decision to permit a party to amend its pleadings for an abuse of discretion." *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008). An abuse of discretion occurs when the decision results in an outcome that falls outside the range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Under MCR 2.118(A)(2), "a party may amend a pleading only by leave of the court . . . . Leave shall be freely given when justice so requires." Trial courts have

discretion to grant or deny motions for leave to amend, but leave "should ordinarily be denied only for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *In re Kostin Estate*, 278 Mich App at 52. In regard to undue delay, "[d]elay, alone, does not warrant denial of a motion to amend. However, a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997) (citation omitted). Prejudice "exists if the amendment would prevent the opposing party from receiving a fair trial, if for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost." *Id*. at 659.

The Spectrum defendants first argue that plaintiff should not have been permitted to amend the complaint to add the 17 allegations discussed above because the requisite notice was not provided. However, in light of our conclusion that these allegations were encompassed within plaintiff's NOI, this argument is without merit. Next, the Spectrum defendants argue that the amendment resulted in undue prejudice because it unfairly imposed upon them "a significant expenditure of time and money." Again, this argument is unavailing. The allegations throughout this lawsuit were clearly set forth—the Spectrum defendants failed to properly care for, evaluate, treat, and monitor Eric's hypoglycemic condition, including by the proper and timely administration of the necessary glucose solutions through a properly placed central venous line. Accordingly, the trial court's decision to grant leave to amend was within the range of reasonable and principled outcomes and did not constitute an abuse of discretion.

II. DOCKET NO. 290633

By direct appeal and cross-appeal, respectively, the Spectrum defendants and the Carson City defendants argue that the trial court erred by denying their motions for summary disposition premised on their claims that the statement of causation in plaintiff's NOI failed to satisfy MCL 600.2912b. After review de novo of the trial court's decision to deny the motions for summary disposition, we disagree. See *Kreiner*, 471 Mich at 129. Whether an NOI complies with the statutory requirements is reviewed de novo as a question of law. *Jackson v Detroit Med Ctr*, 278 Mich App 532, 545; 753 NW2d 635 (2008).

Among the statutorily enumerated items required to appear in an NOI is a causation statement. MCL 600.2912b(4)(e); see, also, *Tousey v Brennan*, 275 Mich App 535, 539; 739 NW2d 128 (2007). More specifically, the plaintiff must state the "manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice." MCL 600.2912b(4)(e). To satisfy this requirement, the notice must contain specific allegations regarding the conduct of the named defendants. *Roberts (After Remand)*, 470 Mich at 701. It is not sufficient to state that the defendants' negligence caused the alleged harm. Rather, the plaintiff must describe the manner in which the alleged breach caused the complained of injury. *Id*. at 699 n 16; see, also, *Boodt*, 481 Mich at 560.

In this case, plaintiff's NOI contained the following causation statement:

As a result of the failure of the defendants to take the actions identified in paragraph "C" Eric Decker suffers from cerebral palsy. He is developmentally delayed. He has

difficulty walking and has limited use of his extremities. He has articulation delays. He has sensory deficits including being legally blind.

However, the notice must be read in its entirety. *Boodt*, 481 Mich at 560. We conclude that the NOI, read as a whole and in conjunction with the underlying facts, clearly describes the manner in which the alleged breaches of the standard of care by the Carson City defendants and the Spectrum defendants were the proximate cause of Eric's injuries.

Plaintiff's NOI indicates that the Carson City defendants delivered Eric by vacuum extraction while he was in distress without a pediatrician present and discharged him within 24 hours without being properly evaluated and despite having an elevated bilirubin level, hypoglycemia, and becoming reluctant to feed. The NOI asserts that "[t]hese problems would have been detected and corrected had Eric not been discharged on the 18th after 24 hours." Because of the Carson City defendants' negligent failure to detect and correct the problems, plaintiff alleged, Eric's medical condition deteriorated and he became profoundly hypoglycemic, necessitating extensive and intensive medical intervention. A CT of his brain "indicated extensive hypoxic ischemic injury of the posterior and possibly the frontal cerebrum. Left [b]asal ganglia and extra-axial hemorrhages were identified with blood over the tentorium, the temporal regions and the sub-arachnoid spaces." Plaintiff also alleged that the Spectrum defendants failed to properly care for, evaluate, treat, and monitor Eric's profound hypoglycemia considering his medical history, declining condition, and test results. According to plaintiff, the Spectrum defendants' negligence caused Eric's continued and progressive hemodynamic and cardiopulmonary deterioration that culmi-

nated in a cardiopulmonary arrest and the development of a large pneumothorax, which caused more complications that eventually required surgical repair. The NOI continues that "Eric has been diagnosed with Cerebral Palsy from early anoxic injury," has sensory deficits, is developmentally delayed, and is legally blind.

Contrary to defendants' contention that the NOI contains no description of how the harm to Eric was caused, we are clearly able to discern from the NOI the manner in which it is alleged the breaches of the standard of practice or care proximately caused the injuries claimed in the notice. See MCL 600.2912b(4)(e). Thus, the trial court properly denied defendants' motions for summary disposition premised on this ground.

Next, the Spectrum defendants argue that the trial court erred by denying their motion for summary disposition as to plaintiff's nursing malpractice claims because plaintiff's expert reviewed the case "in light of a 'national' standard of care"; thus the claim is unsupported by expert testimony. We disagree.

" 'In a medical malpractice case, the plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury.' " *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 492; 668 NW2d 402 (2003), quoting *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). Expert testimony is required to establish the standard of care and to demonstrate the defendant's alleged failure to conform to that standard. *Birmingham v Vance*, 204 Mich App 418, 421; 516 NW2d 95 (1994). "A party offering the testimony of an expert witness must demonstrate the witness' knowledge of the applicable standard of care." *Bahr v Harper-*

*Grace Hosps*, 448 Mich 135, 141; 528 NW2d 170 (1995). A nonlocal expert may be qualified to testify if he or she demonstrates a familiarity with the standard of care in an area similar to the community in which the defendant practiced. *Turbin v Graesser (On Remand)*, 214 Mich App 215, 218-219; 542 NW2d 607 (1995).

Although nurses are licensed healthcare professionals, they do not engage in the practice of medicine. *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 20; 651 NW2d 356 (2002). Accordingly, the standards of care for general practitioners and specialists do not apply to nurses. *Id.* at 18-20. Rather, the common-law standard of care applies to malpractice actions against nurses. *Id.* at 21. "[T]he applicable standard of care is the skill and care ordinarily possessed and exercised by practitioners of the profession in the same or similar localities." *Id.* at 21-22. The standard of care required of a nurse must be established by expert testimony. *Wiley*, 257 Mich App at 492. "Expert testimony is necessary to establish the standard of care because the ordinary layperson is not equipped by common knowledge and experience to judge the skill and competence of the service and determine whether it meets the standard of practice in the community." *Id.*, citing *Locke v Pachtman*, 446 Mich 216, 223; 521 NW2d 786 (1994).

Here, contrary to the Spectrum defendants' claims, it is clear from plaintiff's expert's deposition testimony that she applied the proper standard of care with regard to plaintiff's nursing malpractice claims. Defendants' argument is premised on the fact that when plaintiff's expert witness, Michele Wolff, R.N., was asked whether the standard of care she was applying to this case was either a national or local standard, Wolff replied that it was a "national" standard. However, the actual substance of Wolff's lengthy testimony was that the proce-

dures at issue here are so commonplace that the *same* standard of care applied locally and nationally. In other words, for example, no matter where a nurse is practicing: (1) central lines must be monitored and evaluated for patency, as well as utilized correctly, (2) particularized care must be given to a patient on the basis of the patient's medical condition, (3) physician orders must be followed, and (4) nurses must record, apprise, and report to physicians and other providers significant changes in a patient's condition, as well as record such verbal communications. Thus, plaintiff's expert applied the proper standard of care, which happened to be the same locally as well as nationally. See *LeBlanc v Lentini*, 82 Mich App 5, 19; 266 NW2d 643 (1978).

Further, contrary to the Spectrum defendants' claim, Wolff demonstrated her familiarity with the standard of care in an area similar to the community in which the defendant nurses practiced. See *Turbin (On Remand)*, 214 Mich App 217-218. Wolff testified regarding her extensive experience working in the pediatric intensive care unit at Children's Hospital of Orange County, California, dating back to at least 1986. She also had an extensive work history as a professor at Saddleback College in California, providing instruction in the area of pediatrics, including PICUs. Wolff further testified that the PICU at Children's Hospital of Orange County was very similar to the PICU at Butterworth Hospital, including with regard to the availability of appropriate resources. They were both well-staffed, well-equipped PICUs. Although she was not questioned extensively on the issue, Wolff testified that Grand Rapids is a medium or moderate-sized city, fairly well off, and pretty similar to Orange County, which is also a medium-sized city. In light of the evidence of record, we conclude that the trial court properly denied the Spectrum defendants' motion for summary disposition premised on the argu-

ment that the nursing malpractice claims were unsupported by expert testimony.

Finally, the Spectrum defendants argue that the trial court should have summarily dismissed plaintiff's nursing malpractice claims premised on the alleged failure to chart communications with physicians. We disagree.

The Spectrum defendants argue that the nurses who provided the contested care to Eric were not obligated by hospital policy to document their oral communications with physicians who were also providing care to Eric in the PICU. Therefore, the claims set forth at ¶ 42(q), (r), (nn), (oo), and (qq) of plaintiff's amended complaint, which "deal[] in some way with purported failures on the various nurses['] parts to chart their communications with other providers" should be dismissed.

The specific relevant claims set forth in ¶ 42 are:

q. The RN's in the PICU failed to assure that all employees and physicians were at all times fully apprised of the patient's condition and requirements for the patient's care;

r. The OBGYN, Pediatricians, pediatric critical care doctors, and the RN's failed to keep complete, detailed, and specific records concerning the progress, symptoms, and complaints demonstrated by the patient, so as to apprise treating physicians of the detailed and precise condition of the patient;

\* \* \*

nn. The PICU nurse failed to report to the physicians the findings of decreased heart rate from the 130's to the 100's, decreased respiratory rate from the 30's to teens, and decreased oxygen saturation to the 70's which is charted at [3:04 a.m.].

oo. Based upon the current information available it appears that the PICU nurse did not report the problems drawing from the catheter to a physician in a timely manner.

\* \* \*

qq. If the PICU nurse did not inform a physician of the drop in blood sugar from 90 at [4:00 a.m.] on the 20th to 48 at [5:07 a.m.] and 37 at [5:50 a.m.] this was below the standard of care. A physician should have been informed of those changes so that appropriate action could be taken[.]

Contrary to defendants' argument, these allegations clearly do not merely allege the nurses' failure to *chart* their communications with other medical providers. In fact, they allege a failure to "apprise," "report," and "inform" physicians and other providers of their findings, problems, and/or changes in the patient's condition. Thus, as plaintiff argues, the allegations pertain to "the level of *communication* that should have existed between the physicians who treated plaintiff and the hospital staff." Accordingly, defendants' argument is wholly without merit. And, to the extent that negligent written communication, as well as negligent oral communication, may be included in plaintiff's claims, those claims are governed by the applicable standard of care—the standard of care for nurses.

Affirmed and remanded for further proceedings. We do not retain jurisdiction. Costs to plaintiff as the prevailing party. MCR 7.219(A).