*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

METRO HEALTHCARE SERVICES, INC., d/b/a
METRO SOLUTIONS,

        Plaintiff/Counterdefendant-
        Appellee,

v

INNOVATIVE PAYROLL PROCESSING, INC.
and AHMAD CHEBBANI,

        Defendants-Appellants,

and

METRO SOLUTIONS MI CHOICE, LLC and
METRO SOLUTIONS MI HEALTHLINK, LLC,

        Defendants/Counterplaintiffs-
        Appellants.

UNPUBLISHED
October 10, 2019

No. 342802
Wayne Circuit Court
LC No. 16-007213-CB

Before: CAVANAGH, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Defendants, Innovative Payroll Processing, Inc. (IPP), Ahmad Chebbani, Metro Solutions MI Choice, LLC (Choice), and Metro Solutions MI Healthlink, LLC (Healthlink), appeal as of right the judgment of the trial court entered in favor of plaintiff Metro Healthcare Services, Inc., doing business as Metro Solutions (Metro Solutions), and against IPP, Chebbani, and Healthlink in the amount of $200,686.88. Defendants challenge the portion of the judgment awarding Metro Solutions attorney fees, and also challenge the earlier orders of the trial court denying

-1-

Healthlink's and Choice's motion to amend their counterclaim, and denying defendants' motion to file an amended motion for summary disposition. We affirm.

## I. FACTS

This case arises from a business arrangement that gave rise to claims of conversion, breach of contract, and breach of fiduciary duty. Plaintiff Metro Solutions is a non-profit corporation that acts as a fiscal intermediary for other entities. As such, Metro Solutions administers funds that are directed to particular entities from a government agency or from a foundation; Metro Solutions contracts with these entities to receive the funds on behalf of the entities, then disburses the funds as directed by the entity. The President and CEO of Metro Solutions is Rose Khalifa.

Defendant IPP is a corporation that processes payrolls for other businesses, and is solely owned by defendant Chebbani. In October 2014, Metro Solutions contracted with IPP for payroll services for Metro Solutions' own employees. Khalifa testified that this agreement is the only written agreement between the parties. To facilitate IPP processing the payroll for Metro Solutions, Metro Solutions permitted IPP to access Metro Solutions' bank account to fund the payroll. Khalifa testified that for each payroll, IPP notified Metro Solutions in advance regarding how much would be withdrawn from Metro Solutions' bank account, and IPP provided Metro Solutions with an invoice regarding each payroll.

In 2013, Metro Solutions entered into an agreement with the Detroit Area Agency on Aging (DAAA) to act as fiscal intermediary for a DAAA program called MI Choice; part of Metro Solutions' duties was processing the payroll payments to in-home caregivers who were to receive payment through the MI Choice program. In 2015, DAAA approached Metro Solutions about expanding their agreement so that Metro Solutions would also serve as the fiscal intermediary for a new DAAA project, known as MI HealthLink Pilot Program (pilot program), for dual eligible participants of Medicare and Medicaid benefits.

In June 2015, Metro Solutions entered into an agreement with the DAAA to act as fiscal intermediary for the pilot program. Under its agreement with the DAAA, each client referred to Metro Solutions as part of the pilot program was a person receiving in-home care by a care provider, and each client was to be treated as the employer of the care provider. Metro Solutions' duties under its agreement with DAAA included establishing an Employer Identification Number for each client, purchasing workers compensation insurance policies for each client, conducting background checks, and processing payroll to each in-home care provider on behalf of each client.

Sometime in 2015, Khalifa discussed with Chebbani the possibility of subcontracting to IPP the payroll processing and other human resources services for the clients referred to Metro Solutions under the DAAA pilot program. Although the parties dispute the specifics of the arrangement, sometime in 2015, Khalifa and Chebbani agreed that IPP would process the payroll for clients under the pilot program on behalf of Metro Solutions. According to Metro Solutions, this arrangement was on a trial basis and the amount IPP was to be paid had yet to be determined and was contingent upon the amount of work generated by the pilot program. Metro Solutions

alleged that Chebbani insisted that his attorney would draft the parties' agreement commemorating their arrangement, but no contract was ever presented or executed.

On September 1, 2015, Chebbani created defendants Healthlink and Choice; the LLCs are solely owned by Chebbani. Chebbani testified that he created the two LLCs, after Khalifa urged him to do so, for purposes of undertaking the payroll and human resources aspects of the DAAA pilot program. He further testified that from his conversations with Khalifa, he understood that he and Metro Solutions would jointly own the LLCs. By contrast, Khalifa testified that Metro Solutions did not agree that Chebbani would create new LLCs and did not agree to co-ownership of such entities. Metro Solutions alleged that the parties agreed only that IPP would continue to process the payroll for Metro Solutions, and that IPP would expand those services under the pilot program.

Metro Solutions received its first client referral under the pilot program in August 2015. Metro Solutions authorized IPP to access its bank account to process payroll checks for the employees of the pilot program clients. In September and October 2015, IPP processed the payroll for Metro Solutions under the DAAA pilot program, each time withdrawing funds from Metro Solutions' bank account. Apparently unbeknownst to Metro Solutions, Chebbani established a separate bank account in the name of Healthlink from which to pay the pilot program caregivers; each lump sum IPP transferred from Metro Solutions' account was transferred to the Healthlink account. IPP employees then used the Healthlink account to issue checks to the in-home caregivers. The checks issued on that account were issued in the name of Healthlink. IPP processed six pilot program payrolls for Metro Solutions in September and October 2015.

According to Khalifa, IPP failed to provide Metro Solutions with an appropriate accounting regarding the sums it withdrew from Metro Solutions' account. Sometime in September or October 2015, Kahlifa requested a detailed accounting of the funds withdrawn, but Chebbani failed to provide the information. On October 21, 2015, Khalifa and Chebbani met and agreed to end the relationship between Metro Solutions and IPP after the next payroll. Khalifa testified that Chebbani acknowledged that IPP had withdrawn more funds than was justified from Metro Solutions' account, and promised to issue Metro Solutions a check from IPP for the overcharged amount, but never did so.

Thereafter, in preparation to process the October 23, 2015 payroll, IPP notified Metro Solutions that it planned to withdraw $52,134.40 from Metro Solutions' account. Believing this to be in excess of the amount required for that payroll, Khalifa refused approval for that amount, approving only $33,197.82. Khalifa testified that on October 24, 2017, she informed Metro Solutions' bank that IPP no longer had authorization to withdraw from Metro Solutions' account.

On October 26, 2015, Khalifa sent Chebbani a letter terminating IPP's services to Metro Solutions. Metro Solutions alleged that thereafter, it determined that IPP had withdrawn $119,000 more from Metro Solutions' account than was necessary to process the payroll under the pilot program, and also had failed to do certain assigned tasks, such as obtaining workers compensation policies for the in-home caregivers and processing the caregivers' 2015 year-end tax statements. Metro Solutions initiated this action against IPP and Chebbani alleging conversion, and also alleging, against IPP, breach of contract and breach of fiduciary duty.

Metro Solutions also sought declaratory relief, asking that the trial court declare that there was not a partnership established between IPP and Metro Solutions, that any such alleged partnership was dissolved, and that any contracts between the two parties were terminated.

In their answer to the complaint, IPP and Chebbani denied that they had contracted with Metro Solutions to provide services as part of the pilot program, and stated that any agreement with Metro Solutions had been undertaken by Healthlink, which had in turn contracted with IPP to perform the payroll processing for Healthlink. On August 2, 2016, Healthlink filed a separate action against Metro Solutions, alleging that there was a partnership between Metro Solutions and Healthlink regarding the pilot program.

Metro Solutions moved to amend its complaint to add Healthlink and Choice as defendants. The amended complaint alleged conversion as to all defendants, breach of contract and breach of fiduciary duty by IPP, and sought declaratory judgment as to all defendants. The trial court granted Metro Solutions' motion to amend the complaint. IPP and Chebbani moved for reconsideration of the trial court's order permitting Metro Solutions to amend its complaint, which the trial court denied.

IPP and Chebbani moved for summary disposition of Metro Solutions' claims against those two defendants under MCR 2.116(C)(8) and (10). Healthlink and Choice then filed a counterclaim against Metro Solutions, alleging breach of contract and conversion, and also seeking a declaratory ruling that a partnership existed between Metro Solutions and Healthcare and Choice.

At the hearing held before the trial court on the pending motions, the trial court determined that summary disposition was not appropriate at that point for either party because there existed issues of fact, and discovery was ongoing. The trial court also directed defendants to dismiss their separate lawsuit and to file a counterclaim in this action.

Healthlink and Choice filed a counterclaim, and Metro Solutions moved for summary disposition of the counterclaim. Thereafter, Metro Solutions moved for summary disposition under MCR 2.116(C)(10) and MCR 2.605, of Count IV of its amended complaint seeking declaratory judgment, and of Count III of the counterclaim, which also sought declaratory judgment. The declaratory judgment sought by Metro Solutions was a ruling by the trial court that no partnership existed between Metro Solutions and any of the defendants. Defendants then moved for summary disposition of Metro Solutions' amended complaint under MCR 2.116(C)(10).

At the conclusion of the hearing on the motions, the trial court granted Metro Solutions' motions for summary disposition and dismissed Healthlink's and Choice's counterclaim. The trial court stated on the record that with respect to the counterclaim for conversion, Metro Solutions had carried the burden of proof that the money in question was owned by Metro Solutions, not by Healthlink or Choice, and therefore Healthlink and Choice could not establish conversion of the money by Metro Solutions; there was therefore no question of fact to be submitted to the jury on the conversion count of the counterclaim. The trial court also dismissed the counterclaims for breach of contract and for declaratory judgment, finding that they were based on allegations of a partnership but there was no evidence to support a finding of a

partnership. The trial court permitted Healthlink and Choice to file a motion for leave to amend the counterclaim. The trial court further ordered that defendants refile their earlier motion for summary disposition by September 8, 2017.

The trial court also granted Metro Solutions' request for declaratory judgment, finding that no partnership existed between Metro Solutions and either Choice or Healthlink. The trial court explained on the record that the counterclaim had alleged a partnership, but that during the hearing defense counsel had conceded that there was no partnership. Instead, the defense now asserted that Khalifa and Chebbani had agreed to enter into a contract to form an LLC owned equally by Metro Solutions and Chebbani for the purpose of processing the payroll for the pilot program, and to share equally in the profits from that undertaking.

Healthlink and Choice timely filed their motion to amend the counterclaim, together with their amended counterclaim, alleging breach of contract by Metro Solutions. However, defendants did not refile their motion for summary disposition until November 6, 2017, at which time they also moved for the trial court to accept the late filing of the amended motion.

The trial court denied Healthlink's and Choice's motion to amend the counterclaim, and also denied defendants' motion for leave to file late the amended motion for summary disposition. The trial court noted that it nonetheless had reviewed the proposed amended motion for summary disposition and found it to be without merit because defendants' brief in support of the amended motion failed to cite supporting authority.

Defendants thereafter sought interlocutory relief from this Court, which denied the application for leave to appeal, being unpersuaded of the need for immediate appellate review. *Metro Healthcare Services, Inc v Innovative Payroll Processing, Inc*, unpublished order of the Court of Appeals, entered December 20, 2017.

The parties proceeded to a jury trial on Metro Solutions' remaining claims of conversion, breach of contract, and breach of fiduciary duty. At the conclusion of trial, the jury found in favor of Metro Solutions on all counts, and awarded Metro Solutions $84,650 in actual damages.

The trial court entered judgment on the verdict in the amount of $200,686.88, being $84,650 in actual damages, attorney fees of $109,077.50, costs of $3,132.48, and prejudgment interest of $3,826.90. Defendants now appeal from the order of judgment, challenging the award of attorney fees, and also challenging the trial court's previous orders denying the amendment of the counterclaim and denying the late filing of defendants' amended motion for summary disposition.

## II. DISCUSSION

### A. MOTION TO AMEND THE COUNTERCLAIM

Defendants first contend that the trial court abused its discretion by denying Healthlink's and Choice's motion to amend their counterclaim. We disagree.

We review for an abuse of discretion the trial court's decision to grant or deny a motion to amend pleadings. *Sanders v Perfecting Church*, 303 Mich App 1, 8-9; 840 NW2d 401 (2013).

An abuse of discretion occurs when the trial court chooses an outcome outside of the range of reasonable and principled outcomes. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather there will be more than one reasonable and principled outcome." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (quotation marks and citation omitted). In other words, an abuse of discretion is more than a matter of a difference of judicial opinion, and instead occurs only when the trial court's decision strays outside that range of reasonable and principled outcomes. *Augustine v Allstate Ins* Co, 292 Mich App 408, 419; 807 NW2d 77 (2011).

MCR 2.118(A)(2) provides that leave to amend a pleading "shall be freely given when justice so requires." Further, MCR 2.116(I)(5) provides:

> If the grounds asserted [in support of summary disposition] are based in subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified.

Thus, under MCR 2.116(I)(5), when a trial court grants summary disposition under MCR 2.116(C)(8), (9), or (10), the trial court must permit the parties to amend their pleadings unless amendment would be futile. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997). Leave to amend "should ordinarily be denied only for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *Decker v Rochowiak*, 287 Mich App 666, 682; 791 NW2d 507 (2010). In addition, "[a] determination of futility must be based on the legal insufficiency of the claim on its face." *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 139; 676 NW2d 633 (2004).

In this case, the trial court granted Metro Solutions summary disposition of Healthlink's and Choice's counterclaim, but permitted Healthlink and Choice to move to amend their counterclaim. Healthlink and Choice filed their motion to amend the counterclaim, together with their amended counterclaim, alleging breach of contract by Metro Solutions. The trial court then denied Healthlink's and Choice's motion to amend the counterclaim, finding that doing so would be futile. In a detailed opinion on the record, the trial court explained that defendants' proposed amended counterclaim failed to assert the elements of breach of contract; specifically, the amended counterclaim did not assert facts to establish mutual assent on all essential terms of the alleged contract. We agree.

A valid contract requires "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 508; 885 NW2d 861 (2016). In addition, for a contract to be formed, there must be an offer, acceptance, and mutual assent, being a meeting of the minds, to all essential terms. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452-453; 733 NW2d 766 (2007). A contract does not exist without mutual assent. *Calhoun Co v Blue Cross Blue Shield of Michigan*, 297 Mich App 1, 13; 824 NW2d 202 (2012). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. (quotation marks and citations omitted). In addition, the

acceptance must be unambiguous and in strict conformance with the offer for a contract to form. *Kloian*, 273 Mich App at 452-453.

In this case, the allegations of the proposed amended counterclaim do not allege a valid contract. The proposed amended counterclaim does not demonstrate offer, acceptance, and mutual assent, or meeting of the minds, to all the essential terms necessary to establish a contract. At most, the proposed amended counterclaim alleges that the parties discussed entering into an agreement to contract and Chebbani formed a subjective opinion as to what the agreement would be. Because the proposed amended counterclaim does not set out allegations adequate to establish a contract or a breach thereof, the trial court correctly determined that the proposed amended pleading was futile. The trial court stated its particularized reason for denying the motion on the record, see *Decker*, 287 Mich App at 681, and that finding was accurately based on the legal insufficiency of the claim on its face. See *Liggett Restaurant Group, Inc*, 260 Mich App at 138. The trial court's decision was therefore not outside the range of reasonable and principled outcomes, and the trial court therefore did not abuse its discretion by denying leave to amend the counterclaim.

## B. MOTION FOR SUMMARY DISPOSITION

Defendants next contend that the trial court abused its discretion by declining to permit them to file their amended motion for summary disposition. We disagree. We review for an abuse of discretion a trial court's decision to decline to entertain motions not filed in compliance with the trial court's scheduling order. *Kemerko Clawson, LLC v RXIV Inc*, 269 Mich App 347, 349; 711 NW2d 801 (2006).

MCR 2.401(B)(2) provides that if the trial court concludes that a scheduling order would facilitate the progress of the case, "the court shall establish times for events . . . the court deems appropriate" including the filing of motions. The trial court has discretion to decline to entertain motions that are not filed in compliance with the deadlines established by the trial court. *Kermerko*, 269 Mich App at 349. In addition, trial courts possess the inherent right to sanction litigants and their counsel, even to the extent of dismissing an action. *Maldonado*, 476 Mich at 388.

Here, defendants do not dispute that their motion was not timely filed. The trial court ordered defendants to refile their motion for summary disposition by September 8, 2017, and defendants did not refile the motion until November 6, 2017. Defendants argue, however, that the trial court should not have required them to refile their motion for summary disposition, and therefore the trial court abused its discretion by failing to permit the late refiling of the motion. Defendants suggest that they were required to refile it for reasons stated by the trial court off the record.

It is not possible for this Court to review what allegedly occurred off the record. What the record does reveal, however, is that the trial court permitted defendants to refile their motion for summary disposition, but defendants failed to do so timely. Although the record does not specify the reason the refiling of the motion was necessary, given that the trial court had ruled on certain aspects of the claims, it appears that the trial court was permitting defendants an opportunity to refile their motion to adjust for any insufficiencies then apparent in their existing motion. Because enforcing the deadlines established by the trial court in a scheduling order is

-7-

within the discretion of the trial court, and because defendants have not demonstrated that the trial court abused its discretion by enforcing that deadline, we conclude that the trial court did not abuse its discretion. See *Kermerk*o, 269 Mich App at 349.

Moreover, the trial court reviewed the merits of defendants' amended motion. The trial court noted that it nonetheless had reviewed the proposed amended motion for summary disposition and found it to be without merit because defendants' brief in support of the amended motion failed to cite supporting authority.[1] In light of these considerations, we conclude that the trial court did not abuse its discretion by declining to permit defendants to file their late and meritless motion for summary disposition.

## C. ATTORNEY FEES

Lastly, defendants contend that the trial court erred in awarding Metro Solutions attorney fees under the conversion statute for fees that were not related to the conversion claim, and further erred in awarding attorney fees at the rate of $350 per hour. Again, we disagree.

We review a trial court's award of attorney fees for an abuse of discretion. *Pirgu v United Services Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). Specifically, the decision to award attorney fees and the reasonableness of the attorney fees awarded is reviewed for an abuse of discretion. *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 682; 713 NW2d 814 (2006). The factual findings underlying the award are reviewed for clear error, and underlying questions of law are reviewed de novo. *Brown v Home Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012). A trial court abuses its discretion when it makes an error of law. *Pirgu*, 499 Mich at 274.

Michigan follows the "American rule" with regard to the award of attorney fees, which provides that a party may not recover attorney fees as an element of costs or damages unless expressly permitted by statute, court rule, common-law exception, or by contract. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Application of this rule prevents trial courts from using attorney fees as an economic sanction to prohibit litigants from exercising their right to trial. *McKelvie v Mt Clemens*, 193 Mich App 81, 84; 483 NW2d 442 (1992).

In this case, Metro Solutions sought attorney fees under the conversion statute, MCL 600.2919a, as a case evaluation sanction under MCR 2.403(O), and because defendants' claim was frivolous. The trial court found that defendants' case was not frivolous, but found that Metro Solutions was entitled to attorney fees as a result of the case evaluation. However, the

---

[1] A review of defendants' earlier motion for summary disposition reveals that the earlier version also lacked citation of authority, which may shed light on the trial court's decision to order that the motion be refiled. In addition, defendants' earlier motion presented positions regarding the parties' "partnership" that defendants thereafter eschewed, also necessitating a refiling of the motion with arguments compatible with defendants' new theory of the case that no partnership existed.

trial court also found that Metro Solutions was entitled to attorney fees under the conversion statute, MCL 600.2919a, and stated that it was awarding attorney fees under that statute.

Under MCL 600.2919a, a person damaged as a result of another person's stealing, embezzling, or converting property, is entitled to recover "3 times the amount of actual damages sustained, plus costs and reasonable attorney fees." In this case, the parties do not dispute that the jury found that IPP and Healthlink had converted Metro Solutions' funds, and that Chebbani aided in that conversion. Defendants therefore do not challenge Metro Solutions' entitlement to attorney fees under the conversion statute.

Defendants do challenge, however, the trial court's determinations of an hourly rate of $350, and the total number of hours awarded of 311.65, arguing that both determinations are excessive. Defendants argue that the hourly rate of $350 is not justified because Metro Solutions' attorney only charged $200 per hour. Before the trial court, Metro Solutions' attorney explained that he regularly charges up to $400 per hour, but had reduced his hourly rate because Metro Solutions was a non-profit corporation, and presented evidence supporting his credentials and the reasonableness of $350 in the given community and type of work involved in the case. The trial court discussed this information on the record and explained its reasoning in finding the hourly rate of $350 reasonable. Our Supreme Court has made it clear that a "reasonable fee" need not be the same as the actual fee charged. *Smith v Khouri*, 481 Mich 519, 528; 751 NW2d 472 (2008); see also *Cleary v Turning Point*, 203 Mich App 208, 212; 512 NW2d 9 (1994). In this case, the trial court's decision that $350 was a reasonable hourly rate customarily charged in the locality for similar legal services by a similarly-experienced attorney was based upon Metro Solutions' attorney's qualifications and the State Bar's Attorney Income and Billing Rate Summary Report. Thus, there is evidence that the trial court properly relied upon the "market rate" that "lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Smith*, 481 Mich at 531.

Similarly, there is no indication that 311.65 hours is unreasonable given the length and complexity of the litigation. "The fee applicant bears the burden of supporting its claimed hours with evidentiary support." *Augustine*, 292 Mich App at 432, quoting *Smith*, 481 Mich at 532. "The fee applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness." *Id*. Here, Metro Solutions' attorney submitted extensive records regarding his billing and the trial court permitted defendants to contest the reasonableness of the hours expended. Defendants argue that not all of the time expended related to the conversion claim, given that there were also claims for breach of contract and breach of fiduciary duty, as well as claims raised in the counterclaim. The trial court found, however, that all of the counts of the lawsuit were inextricably intertwined, and the record supports the intertwining nature of the claims, parties, witnesses, and theories.

Because there is evidentiary support for the trial court's determination of $350 as a reasonable hourly rate in this case, and the determination that 311.65 was a reasonable amount of hours spent on the case, we conclude that the trial court did not abuse its discretion in making the baseline calculation.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Michael F. Gadola