# STATE OF MICHIGAN

# COURT OF APPEALS

TRAMAINE COTTON,

        Plaintiff-Appellee,

v

BRIAN BANKS,

        Defendant-Appellant,

and

MICHIGAN HOUSE OF REPRESENTATIVES,

        Defendant-Appellee,

and

STATE OF MICHIGAN,

        Defendant.

FOR PUBLICATION
March 26, 2015
9:10 a.m.

No. 319001
Wayne Circuit Court
LC No. 13-006579-CD

Before: SERVITTO, P.J., and STEPHENS and M. J. KELLY, JJ.

M. J. KELLY, J.

In this employment dispute, defendant, Representative Brian Banks of the Michigan House of Representatives, appeals by right the trial court's order denying his motion for summary disposition of the claims by Bank's former staff member, plaintiff, Tramaine Cotton. The primary issue on appeal is whether Banks has absolute immunity from suit under the Speech or Debate clause of Michigan's constitution for personnel decisions involving those members of his staff who might have involvement in the legislative process. See Const 1963, art 4, § 11. For the reasons more fully explained below, we conclude that there were no errors warranting relief. Accordingly, we affirm.

## I. BASIC FACTS

According to Cotton, Banks hired him in January 2013 to serve as a driver. Cotton alleged that, after his hire, Banks continuously expressed his desire to have a dating relationship with him, but Cotton rejected his advances. After Cotton made it clear that he would not agree to a romantic relationship, Cotton maintained that Banks began to assign him tasks that were

-1-

beyond the scope of his employment and asked him to work on days he was not supposed to work. Cotton alleged that he was constructively discharged in April 2013.

Banks, however, presented a very different version of events in his brief in support of his motion for summary disposition. Banks stated that he hired Cotton in February 2013 to serve as a legislative assistant and that Cotton's duties included responding to constituent concerns, attending functions, and driving Banks and other representatives between Detroit and Lansing. Banks claimed that he began proceedings to terminate Cotton's employment after he learned that Cotton had been arrested for driving on a suspended license and missed a court date, which resulted in the issuance of a bench warrant for his arrest. He stated that Cotton was terminated from his employment in May 2013 for those reasons.

In May 2013, Cotton sued Banks and defendant, State of Michigan, for wrongful termination. Cotton alleged that Banks violated Michigan's Civil Rights Act, MCL 37.2101 *et seq.*, by discriminating against him on the basis of his sex, by demanding sexual favors as a condition of employment, by creating a hostile work environment, and by retaliating against him. Cotton also alleged that Banks intentionally inflicted emotional distress on him through sexual harassment. Cotton alleged that the State was vicariously liable for Banks' wrongful conduct as his employer.

In August 2013, the State moved for summary disposition under MCR 2.116(C)(4) and (C)(10). The State argued that, because employees of the House of Representatives were excluded from the state civil service, it was not Cotton's employer for purposes of the Civil Rights Act. It also argued that the Circuit Court did not have jurisdiction over Cotton's intentional tort claim because that claim had to be brought in the Court of Claims.

Banks moved for summary disposition under MCR 2.116(C)(7) and (C)(10) in September 2013. Banks argued that he was absolutely immune from claims arising out of his termination of Cotton's employment under MCL 691.1407(5). He referred to his decision to terminate Cotton as involving an integral part of the legislative process, which was entitled to immunity under an unpublished decision from a circuit court, but Banks did not specifically argue that he had immunity under Const 1963, art 4, § 11. Banks argued that the trial court must also dismiss Cotton's claim premised on retaliation because Cotton did not plead that he reported the alleged sexual harassment to anyone prior to his discharge. Cotton's claim for intentional infliction of emotional distress similarly had to be dismissed, Banks stated, because that claim, as alleged, involved wrongful sexual discrimination in employment and the Civil Rights Act is the exclusive remedy for such a claim.

In response, Cotton argued that the Civil Rights Act constitutes an exception to the immunity provided under MCL 691.1407 and, in any event, the acts of sexual harassment leading to his termination were outside the scope of Banks' authority as a representative. He also maintained that the Civil Rights Act is not the exclusive remedy for the harms occasioned by sexual harassment. As such, he argued, the trial court should deny Banks' motion for summary disposition.

In his reply brief, Banks for the first time argued that he had absolute immunity from suit for any personnel decisions involving his staff under the Speech or Debate Clause of Michigan's constitution, citing Const 1963, art 4, § 11. Banks argued that the undisputed evidence—namely the job description for a legislative assistant and copies of correspondence—showed that Cotton's job duties were integrally related to the legislative process. On that basis, Banks claimed he was immune from liability for his acts concerning Cotton's employment.

In October 2013, the trial court held a hearing on the motions. At the hearing, the trial court expressed its belief that the Civil Rights Act created an exception to all governmental immunity, including immunity provided under the Speech or Debate Clause. It also did not believe that Cotton was so integrally related to the legislative process that immunity would apply. As for Cotton's retaliation claim, the trial court refused to consider Banks' evidence that Cotton did not report the alleged harassment because his motion was brought under MCR 2.116(C)(8). The trial court also did not agree that the Civil Rights Act preempted Cotton's claims for intentional infliction of emotional distress. Finally, the trial court agreed that the State was not Cotton's employer and that the claims against it should be dismissed.

For the reasons stated on the record, the trial court entered an order granting the State's motion for summary disposition and dismissing it as a party without prejudice. It also entered a separate order allowing Cotton to amend his complaint to include the House of Representatives as a defendant. Finally, the trial court entered an order denying Banks' motion for summary disposition.

In that same month, Cotton filed his first amended complaint, which included the Michigan House of Representatives as a defendant. In his amended complaint, Cotton alleged that he reported the sexual harassment to his superiors. Cotton again alleged four counts premised on violations of the Civil Rights Act and a fifth claim of intentional infliction of emotional distress, but alleged the last claim against Banks alone.

Banks then appealed in this Court.

## II. THE SPEECH OR DEBATE CLAUSE

### A. STANDARDS OF REVIEW

Banks first argues the trial court erred when it denied his motion for summary disposition on the ground that he was absolutely immune from suit under Const 1963, art 4, § 11. He maintains that Michigan courts should construe this clause similarly to the federal courts' construction of the federal Speech or Debate Clause. Relying on federal authority, Banks contends this Court should conclude that the Speech or Debate clause applies to bar any claims premised on acts or omissions arising from the legislative process. Because his decision to terminate Cotton implicated the legislative process, the trial court should have determined that he has absolute immunity under Const 1963, art 4, § 11. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court properly interpreted and applied Michigan's constitution. *Wayne Co v Hathcock*, 471 Mich 445, 455; 684 NW2d 765 (2004).

-3-

B.  CIVIL IMMUNITY UNDER THE SPEECH OR DEBATE CLAUSE

Michigan's constitution provides its legislators with a privilege against civil arrest and civil process during sessions of the legislator and immunity from liability for their speech in either house:

> Except as provided by law, senators and representatives shall be privileged from civil arrest and civil process during sessions of the legislature and for five days next before the commencement and after the termination thereof.  They shall not be questioned in any other place for any speech in either house.  [Const 1963, art 4, § 11.]

The first sentence of this clause provides Michigan's legislators with a privilege from civil arrest and civil process.  The purpose of the privilege, our Supreme Court explained, is "to protect the legislators from the trouble, worry and inconvenience of court proceedings during the session, and for a certain time before and after, so that the State could have their undivided time and attention in public affairs." *Auditor General v Wayne Circuit Court*, 234 Mich 540, 542; 208 NW 696 (1926) (construing Const 1908, art 5, § 8, which is the predecessor to the present constitutional provision).  Although an unreasonably long period of immunity might result in the denial of due process in an extreme case, the privilege must generally be construed to give effect to the policy which underlies it: to prevent both actual distraction and potential distraction from public duty during the legislative session. *Bishop v Wayne Circuit Judge*, 395 Mich 672, 677; 237 NW2d 465 (1976).

The second sentence of Const 1963, art 4, § 11—the Speech or Debate Clause—was similarly intended to protect legislators from the distraction of litigation. *Prelesnik v Esquina*, 132 Mich App 341, 347; 347 NW2d 226 (1984).  Read literally, the clause only provides senators and representatives with immunity for speeches made in either house—that is, from being "questioned in any other place for any speech in either house."  See Const 1963, art 4, § 11.  However, this Court has held that, because Michigan's Speech or Debate Clause is substantially similar to the Speech or Debate Clause found in the Constitution of the United States, it should be similarly construed.  See *Prelesnik*, 132 Mich App at 347, citing *Eastland v United States Servicemen's Fund*, 421 US 491; 95 S Ct 1813; 44 L Ed 2d 324 (1975).

The United States Supreme Court has stated that the Speech or Debate Clause was the product of the English experience and was intended to ensure the independence of the legislative branch from interference by the executive or a possibly hostile judiciary. *Eastland*, 421 US at 502.  But, the Court related, it had not limited the protection provided by the Speech or Debate Clause to acts of interference by public officials:

> The applicability of the Clause to private civil actions is supported by the absoluteness of the term "shall not be questioned," and the sweep of the term "in any other Place."  In reading the Clause broadly we have said that legislators acting within the sphere of legitimate legislative activity "should be protected not only from the consequences of litigation's results but also from the burden of defending themselves."  Just as a criminal prosecution infringes upon the independence which the Clause is designed to preserve, a private civil action,

whether for an injunction or damages, creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks to defend the litigation. Private civil actions also may be used to delay and disrupt the legislative function. Moreover, whether a criminal action is instituted by the Executive Branch, or a civil action is brought by private parties, judicial power is still brought to bear on Members of Congress and legislative independence is imperiled. We reaffirm that once it is determined that Members are acting within the "legitimate legislative sphere" the Speech or Debate Clause is an absolute bar to interference. [*Id.* at 503 (citations omitted).]

Consequently, in the absence of a waiver of the immunity, the Speech or Debate clause will immunize a legislator from civil liability premised on acts that he or she took within the legitimate sphere of legislative activity. *Id.*

### C. WAIVER OF IMMUNITY UNDER THE CIVIL RIGHTS ACT

Banks initially argued the trial court should dismiss Cotton's claims because he had immunity under MCL 691.1407(5) and Cotton failed to plead in avoidance of that immunity. See *Yono v Dep't of Trans (On Remand)*, 306 Mich App 671, 682; 858 NW2d 128 (2014) (stating that a plaintiff must plead in avoidance of governmental immunity by alleging facts that, if true, would establish that his or her claim falls within an exception to governmental immunity). Cotton, however, pleaded claims under the Civil Rights Act, which our Supreme Court has recognized constitutes an exception to the immunity provided by MCL 691.1407. See *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002). Banks later asserted before the trial court that he was also entitled to immunity under the Speech or Debate Clause, Const 1963, art 4, § 11. On appeal, Banks has abandoned any contention that MCL 691.1407 immunizes him from claims brought under the Civil Rights Act; instead, he now relies exclusively on the Speech or Debate Clause as the source of his immunity.

As defendant Michigan House of Representatives notes in its brief on appeal, at the hearing on Banks' motion for summary disposition, the trial court expressed its belief that there was no immunity for a claim under the Civil Rights Act because that act—by its own terms—applies to governmental employers. And it is unclear from the trial court's decision whether it denied Banks' motion on that basis. For that reason, the Michigan House of Representatives urges this Court to clarify that the enactment of the Civil Rights Act did not waive the immunity provided under Const 1963, art 4, § 11.

In *Wilkins v Gagliardi*, 219 Mich App 260, 267-269; 556 NW2d 171 (1996), this Court had to determine whether the Speech or Debate Clause, Const 1963, art 4, § 11, provided immunity from suit for an alleged violation of the Open Meetings Act, MCL 15.261 *et seq.*, by the Chairman of the House Oversight Committee. The Court concluded that the chairman was immune from suit under the Speech or Debate clause because his actions fell within the scope of legislative activity and the Legislature did not waive the immunity by applying the Open Meetings Act to public officials. *Id.* at 269-270. In reaching this decision, the Court first expressed doubt that the Legislature had the authority to make an institutional waiver of the immunity provided under Michigan's constitution. *Id.* at 270. Rather, "the history of the Speech or Debate Clause supported an argument that Congress, as a body, should not be free to strip

individual congressmen of the protection guaranteed by that clause." *Id.*, citing *United States v Helstoski*, 442 US 477, 492-493; 99 S Ct 2432; 61 L Ed 2d 12 (1979). But, even if the Legislature had the authority, the court stated, it could not make such a waiver by inference—it must explicitly and unequivocally waive the immunity provided under the Speech or Debate Clause. *Id.* Because the Open Meetings Act did not explicitly waive the individual legislators' immunity by referring to legislators, the Speech or Debate Clause still applied to bar applicable claims against a legislator under that act. *Id.* at 270-271.

The Court also rejected the contention that the Speech or Debate Clause was subject to statutory modification, as provided by a then recent amendment to the constitution:

> Plaintiffs further argue that the amendment of article 4, § 11 that added the words "except as provided by law," gave the Legislature the power to waive the immunity granted under the Speech or Debate Clause. A clear reading of the constitutional provision does not support their argument. The quoted language refers only to the civil arrest and service of process portions of that section. The Speech or Debate Clause, being a totally separate provision in that section of the constitution, was not affected by the change. [*Gagliardi*, 219 Mich App at 271.]

Although the Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, generally applies to the "state or a political subdivision of the state or an agency of the state," MCL 37.2103(g) (defining the term "person"); see also MCL 37.2201(a) (defining "employer" to mean a person who has 1 or more employees and an agent of that person), it does not specifically mention legislators or the immunity provided under the Speech or Debate Clause. Therefore, even assuming that the Legislature has the authority to effect an institutional waiver of the individual immunity provided under Const 1963, art 4, § 11, it did not explicitly and unequivocally waive the immunity provided under that clause. *Gagliardi*, 219 Mich App at 271.

The Legislature did not waive the immunity provided under the Speech or Debate Clause with the enactment of the Civil Rights Act. Accordingly, to the extent that the trial court determined that the Speech or Debate clause did not apply because the Legislature waived its immunity with the enactment of the Civil Rights Act, it erred.

## D. SCOPE OF THE IMMUNITY

A legislator is immune from civil liability for any activities that fall "within the legislative sphere." *Prelesnik*, 132 Mich App at 347. An activity falls within the legislative sphere when it is integral to the legislative process. *Id.*, citing *Gravel v United States*, 408 US 606, 625; 92 S Ct 2614; 33 L Ed 2d 583 (1972). And an activity is integral to the legislative process when it is essential to the passage or rejection of proposed legislation or involves a matter placed solely within the jurisdiction of either house:

> Legislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation

or with respect to other matters which the Constitution places within the jurisdiction of either House. As the Court of Appeals put it, the courts have extended the privilege to matters beyond pure speech or debate in either House, but "only when necessary to prevent indirect impairment of such deliberations." [*Gravel*, 408 US at 625 (citation omitted).]

This Court has had only limited opportunities to apply the Speech or Debate clause to specific facts. The Court in *Gagliardi* held that the chairman of the House Oversight Committee had absolute immunity from suit for ordering the sergeant-at-arms to remove a camcorder from a visitor at a hearing because the committee was pursuing legislative business and the chairman was acting in his capacity as the chairman at time. *Gagliardi*, 219 Mich App at 269. This Court has also extended the immunity provided by the clause to the preparation of an investigatory report by a legislative ombudsman because the job was "pertinent to legislative functions" and authorized by law. *Prelesnik*, 132 Mich App at 347-348. But neither this Court nor our Supreme Court has considered whether and to what extent Michigan's Speech or Debate Clause applies to a legislator's personnel decisions. The United States Supreme Court has, however, examined whether a judge's personnel decisions are immune from suit under the common law absolute immunity for judicial acts.

In *Forrester v White*, 484 US 219, 221; 108 S Ct 538; 98 L Ed2d 555 (1988), the United States Supreme Court had to determine whether a judge had absolute immunity from suit under the common law for allegedly terminating an employee on the basis of her sex in violation of the federal Civil Rights Act. The Court stated that it had "been quite sparing in its recognition of claims to absolute official immunity," but that it had already done so in one clear case: "the Legislative immunity created by the Speech or Debate Clause." *Id.* at 224. It had similarly recognized absolute judicial immunity to protect judicial independence "by insulating judges from vexatious actions by disgruntled litigants." *Id.* at 225. When applied to judicial acts involving the resolution of disputes between parties, the Court explained, "the doctrine of absolute judicial immunity has not been particularly controversial." *Id.* at 227. "Difficulties have arisen," the Court related, "in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges." *Id.*

In clarifying the proper test, the Court determined that the relevant inquiry should be on the nature of the function: "the nature of the function performed, not the identity of the actor who performed it," should inform the immunity analysis. *Id.* at 229. Because the judge acted in his administrative capacity when he terminated the employee rather than in any judicial capacity, he was not entitled to absolute judicial immunity. *Id.* Moreover, the fact that the judge's employment decisions implicated the sound administration of the judiciary did not alter the fact that the decisions were administrative: "Those acts—like many others involved in supervising court employees and overseeing the efficient operation of a court—may have been quite important in providing the necessary conditions of a sound adjudicative system. The decisions at issue, however, were not themselves judicial or adjudicative." *Id.*

Every federal circuit court to consider the issue since the decision in *Forrester* has adopted the functional test described there for determining whether a legislator's act falls under the immunity provided by the federal Speech or Debate Clause. See *Fowler-Nash v Democratic Caucus of Pa House of Representatives*, 469 F3d 328, 332 (CA 3, 2006); *Fields v Office of Eddie*

*Bernice Johnson*, 373 US App DC 32; 459 F3d 1 (2006); *Bastien v Office of Senator Ben Nighthorse Campbell*, 390 F3d 1301, 1319 (CA 10, 2004) ("A personnel decision is not a 'legislative act,' as defined by the Supreme Court, and is therefore not entitled to immunity. The Speech or Debate Clause therefore provides protection only if legislative acts must be proved to establish the claim challenging the personnel action."); *Chateaubriand v Gaspard*, 97 F3d 1218, 1220-1221 (CA 9, 1996) ("Applying these factors, courts generally consider legislators' employment and personnel decisions to be administrative, rather than legislative, acts."); *Negron-Gaztambide v Hernandez-Torres*, 35 F3d 25, 28 (CA 1, 1994). Nevertheless, on appeal, Banks argues that this Court should adopt a legislative duties test similar to that described in *Agromayor v Colberg*, 738 F2d 55 (CA 1, 1984), for determining whether a legislator's employment decisions are immune from suit.

In *Agromayor*, which was decided before the Supreme Court's decision in *Forrester*, the court considered whether the federal Speech or Debate Clause extended to a legislator's decision not to authorize the hire of an applicant for press officer. *Id.* at 57. Although the United States Supreme Court had not yet considered whether an employment decision amounts to a legislative act, the court noted that three justices had expressed the opinion that employment decisions should be covered by the clause and agreed that the minority opinion reflected the proper common law concern with protecting legislators for acts beyond strict speech and debate. *Id.* at 59-60. The court stated that the immunity should only apply to a personnel decision concerning an employee with meaningful input into the legislative process, but warned that courts should not inquire too deeply into "the functions performed by a particular personal legislative aide, inasmuch as such an inquiry itself threatens to undermine the principles that absolute immunity was intended to protect." *Id.* at 60. Because the press officer position was one with "enough opportunity" for " 'meaningful input' into the legislative process," the court concluded that the clause applied and "the employment decision should be immunized." *Id.*

Under the test stated in *Agromayor*, courts must look to the employee's duties to determine if legislative immunity applies; if the employee has meaningful input into the legislative process, the legislator has absolute immunity for his or her decisions regarding that employee under the Speech or Debate clause. Notably, the only other Circuit Court to adopt a test similar to that test has since disavowed it. See *Fields*, 459 F3d at 13, rejecting the test previously adopted in *Browning v US House of Representatives*, 252 US App DC 241; 789 F2d 923, 928-929 (1986).[1]

In *Fields*, the Court of Appeals for the DC Circuit examined whether the Speech or Debate Clause immunized legislators from suits challenging their personnel decisions concerning employees who assist in performing legislative functions; more specifically, the court had to

---

[1] Although it never specifically overruled *Agromayor*, the Court of Appeals for the First Circuit apparently no longer applies the test from that case. See *Fowler-Nash*, 469 F3d at 334 (stating that the "Court of Appeals for the First Circuit has repeatedly undermined or ignored *Agromayor*"). It has instead applied an approach that is similar to the functional approach stated in *Forrester*. *Id.* at 334-335 (examining precedent from the First Circuit).

address the continuing validity of the approach it applied in *Browning*. *Fields*, 459 F3d at 7 (opinion by Randolph, J.).[2]  Under the *Browning* test, immunity turned on the nature of the employee's duties; if the employee's duties were directly related to the due functioning of the legislative process, the legislator's employment decision with regard to that employee would be immune under the Speech or Debate Clause.  *Id.* at 11.  But, the court stated, it had come to believe that this approach was too crude:

> We now see that an employee's duties are too crude a proxy for protected activity.  Our holding in *Browning* presumes that a personnel decision with regard to an employee whose duties are "directly related to the due functioning of the legislative process," is always "an integral part of the deliberative and communicative processes."  But the presumption is, at a minimum, overinclusive and therefore inconsistent with the Court's practice of being "careful not to extend the scope of the protection further than its purposes require."  Any number of counter-examples reveal as much: a legislative aide may be discharged because of budgetary cutbacks; a staff member may be demoted solely for consistent tardiness; a person seeking a top-level staff position might be rejected for having a poor college transcript; and so forth.  That the person targeted by the personnel decision performs duties "directly related to . . . the legislative process" is not enough—conduct must be "part of," not merely "related to," the "due functioning" of the "legislative process" to be protected by the Speech or Debate Clause.  At best, that an employee's duties are directly related to the legislative process establishes merely "some nexus" between the personnel decision and that process. [*Fields*, 459 F3d at 11-12 (citations omitted).]

The Speech or Debate Clause, the court explained, was intended to protect the legislative process, not an individual legislator's legislative goals:

> It may be integral to a Member's legislative goals—indeed, integral even to accomplishing his "constitutionally delegated duties,"—to send newsletters to constituents or deliver speeches outside of Congress to generate support for prospective legislation.  But such acts are "political," not "legislative," and therefore not protected by the Speech or Debate Clause." [*Id.* at 12 (citations omitted).]

For those reasons, the court in *Fields* rejected the test applied in *Browning* and adopted a functional test.  *Id.*

---

[2]  Because Judge Rodgers joined Judge Randolph's opinion in every respect except his framework for handling certain evidentiary problems arising in the summary judgment context, Judge Randolph's opinion constituted a majority as to those issues.  See *Fields*, 459 F3d at 17-18 (Rodgers, J., concurring).

We agree that, in the employment context, the immunity provided by the Speech or Debate clause should not turn on the nature of the employee's duties; whether the employee's duties have some connection to the legislative process is simply too "crude a proxy for protected activity." *Id.* at 11. Accordingly, we reject the tests stated in *Agromayor* and *Browning* and join those jurisdictions that have adopted the functional approach stated in *Forrester*. In applying that approach, courts should be careful to distinguish between true legislative acts, which are entitled to absolute immunity, and acts that merely happen to have been taken by a legislator, but are otherwise administrative in nature. See *Forrester*, 484 US at 227-229. Instead of looking at the employee's duties to determine whether the employee had some meaningful input into the legislative process, courts must examine whether the acts on which the plaintiff predicates liability were legislative acts. *Id.* at 229; *Fields*, 459 F3d at 13. Courts should do this first by examining the pleadings to see if it is necessary to inquire into the legislator's legislative acts—how the legislator "spoke, how he debated, how he voted, or anything he did in the chamber or in committee"—in order to prove the claim. *Fields*, 459 F3d at 13 (quotation marks and citations omitted). If on the face of the pleadings the plaintiff can make out his or her claims without getting into protected conduct, the Speech or Debate Clause will not bar the claims. *Id.*

## E. APPLYING THE LAW

Cotton alleged that Banks used his position and authority as an employer to subject Cotton to inappropriate sexual conduct, which amounted to unlawful discrimination under the Civil Rights Act. According to Cotton, when he refused to enter into a romantic relationship with Banks, Banks retaliated against him and ultimately terminated his employment. None of these allegations involve a legislative act; even the ultimate decision to terminate Cotton's employment did not involve legislative concerns, but was merely administrative. See *Forrester*, 484 US at 229-230; *Fields*, 459 F3d at 13. Therefore, on the face of the pleadings, the immunity provided under the Speech and Debate clause does not apply to Cotton's claims. See *Yono*, 306 Mich App at 682.

Moreover, even considering Banks' version of events and his evidentiary submissions in support, the result is the same. See *id.* at 679-680 (recognizing that a governmental defendant may submit evidence to contradict the allegations stated in the complaint and, if the undisputed evidence demonstrates that the defendant is entitled to immunity, the trial court must dismiss the claims). Banks did not submit any evidence that Cotton's employment and dismissal would require inquiry into prohibited areas. Banks denied having engaged in any inappropriate sexual conduct with Cotton and stated that he terminated Cotton's employment because Cotton misused his status as a legislative assistant and did not have a valid driver's license. The proffered reasons do not implicate Cotton's involvement in any legislative acts and do not require inquiry into Banks' legislative acts or the motivation behind his legislative acts. See *Fields*, 459 F3d at 13.

The trial court did not err when it denied Banks' motion to dismiss premised on the immunity provided under Const 1963, art 4, § 11.

-10-

## F. ADDITIONAL SAFEGUARDS

In its brief on appeal, the Michigan House of Representatives asks this Court to adopt the approach for absolute immunity under the Speech or Debate clause provided by the Court of Appeals for the DC Circuit in *Fields*, which we have done. But it also urges this Court to address and adopt the additional safeguards discussed by that court—namely, the evidentiary privilege as the court applied it to the burden-shifting approach for claims under the Civil Rights Act.

Although the court in *Fields* determined that the claims at issue there were not barred on the face of the pleadings, it nevertheless concluded that the Speech or Debate Clause might still require dismissal. *Fields*, 459 F3d at 14. This, the court maintained, was because the clause also provides legislators with an evidentiary privilege:

> When the Clause does not preclude suit altogether, it still "protect[s] Members from inquiry into legislative acts or the motivation for actual performance of legislative acts." This evidentiary privilege includes a "testimonial privilege." A Member "may not be made to answer" questions—in a deposition, on the witness stand, and so forth—regarding legislative activities. "Revealing information as to a legislative act . . . to a jury"—whether by testimony or other evidence—"would subject a Member to being 'questioned' in a place other than the House or Senate, thereby violating the explicit prohibition of the Speech or Debate Clause." [*Id.* (citations omitted).]

"[E]ven if the challenged personnel decisions are not legislative acts, inquiry into the motivation for those decisions may require inquiry into legislative acts," which would not be permitted under the Speech or Debate Clause. *Id.* For that reason, the court felt that the Speech or Debate Clause posed special problems in the context of employment actions involving the burden-shifting approach. *Id.* at 15, citing *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). A plurality of the court then went on to provide a framework for addressing the evidentiary problem as applied to motions for summary judgment. *Id.* at 15-17.

Because we have decided this issue on the limited record before us, and that record does not implicate any of these concerns, we decline to consider whether and to what extent an evidentiary privilege might apply and decline to adopt the additional safeguards discussed in *Fields*. Such issues would best be addressed in the first instance before the trial court after the parties have had an adequate opportunity to develop the record and their arguments. Nevertheless, nothing in this opinion should be construed to preclude Banks from asserting the immunity provided under the Speech or Debate clause to prevent inquiries into his legislative acts or, after conducting further discovery, from bringing a properly supported motion for summary disposition under MCR 2.116(C)(7), on the ground that one or more of Cotton's claims cannot be established without impermissible inquiry into legislative acts.

## III.  RETALIATION CLAIM

## A.  STANDARD OF REVIEW

Banks next argues the trial court erred when it denied his motion to dismiss Cotton's claim premised on retaliation for reporting Banks' sexual harassment.  Specifically, he argues that the trial court should have dismissed Cotton's retaliation claim because Cotton failed to allege that he actually reported the harassment to a supervisor and because Cotton failed to present evidence to establish a question of fact on this issue after Banks submitted evidence that Cotton had not reported it.  This Court reviews de novo a trial court's decision on a motion for summary disposition.  *Barnard Mfg*, 285 Mich App at 369.

## B.  ANALYSIS

Banks stated in the factual recitation of his brief in support of his motion for summary disposition that Cotton "has never made any reports to any person . . . concerning harassment or discrimination he may have encountered while employed with the Michigan House of Representatives."  He cited an affidavit by the Michigan House of Representative's office director in support of this factual assertion.  Banks then argued that Cotton's retaliation claim had to be dismissed under MCR 2.116(C)(8) because Cotton failed to *plead* that he had reported the harassment or discrimination prior to the alleged acts of retaliation.

Although Banks did assert that Cotton would be unable to plead such facts because he never in fact reported any harassment or discrimination, Banks did not move for summary disposition as to this claim under MCR 2.116(C)(10).  Furthermore, at the hearing on his motion for summary disposition, the trial court made it clear that it was not going to consider the evidentiary submissions or otherwise consider the affidavit as an oral motion under (C)(10):

> So he claims, he alleges in his Complaint that he did make a complaint.  And you're saying he didn't make a complaint and I told you we're not going into issues of fact because this is merely a failure to state a claim.  You submitted an affidavit which is improper in this kind of a motion.  You need to do discovery.  That is a factual thing and he's alleged in his Complaint that he made a complaint.  And I have to accept his allegations as true, so that doesn't fly at least at this point.

In paragraph 11 of his complaint, Cotton alleged that Banks engaged in various acts of sexual harassment against him.  He then alleged in paragraph 11(k) that he "reported all of the above acts to his superiors, however, the acts continued and never ceased."  Cotton incorporated these allegations into his claim for retaliation and further alleged that Banks retaliated against him in several ways for exercising his rights under the Civil Rights Act.  These allegations were sufficient to state a claim of retaliation under MCL 37.2701(a).  See *Barrett v Kirtland Community College*, 245 Mich App 306, 315; 628 NW2d 63 (2001).

The trial court did not err when it denied Banks' motion for summary disposition of Cotton's retaliation claim under MCR 2.116(C)(8).

## IV. EXCLUSIVE REMEDY

### A. STANDARD OF REVIEW

Finally, Banks argues the trial court erred when it denied his motion to dismiss Cotton's intentional infliction of emotional distress claim on the ground that the Civil Rights Act is the exclusive remedy for claims of sexual harassment and discrimination. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg*, 285 Mich App at 369.

### B. ANALYSIS

In his motion for summary disposition, Banks argued that the Civil Rights Act provided the right to be free from sexual harassment in the work environment and provided the exclusive remedy for violations of that right. Citing *Monroe Beverage Co, Inc v Stroh Brewery Co*, 454 Mich 41, 45; 559 NW2d 297 (1997), Banks maintained that Cotton could not maintain a common law claim for intentional infliction of emotional distress premised on the statutorily prohibited sexual discrimination.

Banks' reliance on *Monroe Beverage Co* is misplaced. In that case, our Supreme Court analyzed a statute that established a cause of action unknown at common law. *Id.* at 45. Because the Legislature created new rights and remedies with this statute, the Court explained, the Court must enforce the statute's limits on who may avail themselves of the right and may not infer other remedies than those provided by the statute. *Id.* The Court did not hold that the creation of a statutory right necessarily abrogates any common law action which could conceivably arise from the same set of facts.

Michigan courts have recognized that the common law tort of intentional infliction of emotional distress vindicates a person's "right to be free from serious, intentional and unprivileged invasions of mental and emotional tranquility." *Campos v Oldsmobile Division, General Motors Corp*, 71 Mich App 23, 25; 246 NW2d 352 (1976). By contrast, the Civil Rights Act protects a person from discrimination in employment, housing, and public accommodations. See MCL 37.2102(1). Courts will not lightly presume the abrogation or modification of the common law. See *Dawe v Bar-Levav & Assoc, PC*, 485 Mich 20, 28; 780 NW2d 272 (2010). Because these two claims vindicate different rights, it cannot be inferred that, with the enactment of the Civil Rights Act, the Legislature intended to abrogate any common law claims where the facts giving rise to the claim might also give rise to a claim under the Civil Right Act. Moreover, the Legislature specifically provided that the Civil Rights Act should not "be construed to diminish the right of a person to direct or immediate legal or equitable remedies in the courts of the state." MCL 37.2803.

Cotton could properly allege a claim for intentional infliction of emotional distress premised on facts which might also support a claim under the Civil Rights Act.

The trial court did not err when it denied Banks' motion for summary disposition of Cotton's intentional infliction of emotional distress claim on the ground that the Civil Rights Act provided the exclusive remedy for claims involving sexual harassment.

## V. CONCLUSION

Although the Legislature did not waive the immunity provided under Michigan's Speech or Debate Clause, Const 1963, art 4, § 11, with the enactment of the Civil Rights Act, because Cotton's claims do not on the face of the pleadings or considering the record evidence implicate Banks' legislative acts, the Speech or Debate clause does not bar Cotton's claims. Therefore, the trial court did not err when it denied Banks' motion premised on the immunity provided by the Speech or Debate clause. The trial court also did not err when it determined that Cotton sufficiently pleaded the elements of a retaliation claim under the Civil Rights Act to survive a motion under MCR 2.116(C)(8). Finally, the trial court correctly determined that the enactment of the Civil Rights Act did not abrogate the common law claim for intentional infliction of emotional distress to the extent that the latter claim involves acts that might also amount to unlawful discrimination under the Civil Rights Act.

There were no errors warranting relief.

Affirmed. There being an important question of public policy on appeal, we order that none of the parties may tax their costs. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens