*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ATTICUS PARSIFAL MOAK

   Plaintiff-Appellant,

v

STEPHEN B. BROWNELL, KIMBERLY M. BROWNELL, and MARCELLA WATSON

   Defendants-Appellees.

UNPUBLISHED
January 23, 2020

No. 346375
Washtenaw Circuit Court
LC No. 18-000320-NO

Before: BOONSTRA, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants Stephen and Kimberly Brownell[1] and Marcella Watson. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Beginning in May 2010, plaintiff entered into consecutive yearly residential leases for an apartment in Ann Arbor, Michigan. Defendant Stephen Brownell was the lessor. The lease agreement contained the following relevant provisions:

> Paragraph 6. QUIET ENJOYMENT. Lessor covenants that on paying the rent and performing the covenants herein contained, Lessee shall peacefully and quietly have, hold, and enjoy the demised premises for the agreed term.

> Paragraph 18. UTILITIES. Lessee shall be responsible for arranging for and paying all utility services required on the premises, except that heat, electric, water, cable tv shall be provided by lessor.

---

[1] Because they share a surname, we will refer to Stephen and Kimberly by their first names.

In 2018, plaintiff filed a complaint against defendants, claiming that all three defendants had breached the lease agreement[2] by destroying the quiet and peaceful enjoyment of the leased premises (Count I), by failing to provide "habitable heat and habitable water utilities" as required by the lease (Count II), and by failing to provide cable television as required by the lease (Count III). Plaintiff also asserted a claim for intentional infliction of emotional distress (IIED) against all defendants (Count IV). According to the complaint, plaintiff is disabled and prone to debilitating migraine headaches as the result of a "closed-head injury" in or around 2009.

Plaintiff's complaint set forth numerous allegations that defendants had conspired to subject plaintiff to "noise attacks" that were designed to, and did, trigger migraine headaches in plaintiff. The complaint alleged four such "noise attacks" in 2017, alleging that defendants caused neighborhood children to yell loudly and play musical instruments in a manner intended to aggravate plaintiff's condition. Plaintiff also alleged that defendants had engaged in a pattern of disrupting the heating and water temperature control in his apartment, causing the heat "to soar into extremely high temperatures, in excess of 97 degrees" and the water temperature to be "scaldingly hot," between 150 degrees and 160 degrees. Defendants denied these allegations.

After filing his complaint, plaintiff served an initial set of interrogatories. Defendants timely responded. However, defendants objected and refused to answer certain interrogatories that asked for the names and addresses of any children involved in the alleged noise attacks, on the grounds that "the request for names of children is neither relevant nor reasonably calculated to lead to admissible evidence." Plaintiff filed a motion to compel defendants to answer, arguing that defendants' objections were without merit because the children were fact-witnesses to the events alleged in plaintiff's complaint. Shortly thereafter, plaintiff filed a motion for leave to file an amended complaint, stating that plaintiff had "recently discovered additional facts" supporting a claim for civil assault and battery and seeking to add that additional claim. At oral argument, plaintiff's counsel argued that he had recently discovered a fact witness, an 11-year-old child who allegedly could corroborate plaintiff's allegations that Kimberly had orchestrated children to perform "noise attacks" on plaintiff. Defendants' counsel argued that the identities of the children were irrelevant, that they were designed only to harass defendants, and that plaintiff had waited too long to seek leave to amend. The trial court denied the motion for leave to file an amended complaint after concluding that there was no justification for plaintiff having waited nearly six months to seek the amendment. The trial court took under advisement plaintiff's motion to compel discovery pending defendants' upcoming motion for summary disposition.

Shortly thereafter, defendants filed a motion for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10). Defendants argued that any breach of contract claims against Kimberly or Watson must be dismissed because neither was a party to the lease agreement. Defendants also argued that there was "no allegation (or evidence) that Stephen did anything to violate" the covenant of quiet enjoyment in the lease but, rather, "[a]ll of plaintiff's allegations of a breach of quiet enjoyment are against persons who are not parties to the lease."

---

[2] Kimberly is Stephen's daughter, and she and Watson lived in a neighboring apartment; they were not parties to the lease agreement.

Defendants argued that plaintiff had offered no evidence that Stephen had refused to correct any problems with the heat, that plaintiff was unable to use the apartment, or that plaintiff had suffered any damages. Defendants noted that when plaintiff called the police to report the allegedly "scalding hot water," the responding police officer found nothing wrong, as shown by his police report, and that no other tenants complained despite the fact that the entire building only had a single water heater. Defendants also argued that plaintiff had never requested that cable TV be provided, despite having lived in the apartment for over six years, and that plaintiff had in fact declined an offer by Kimberly to provide cable TV, stating that he did not even own a television.

Regarding plaintiff's claim of IIED, defendant argued that there was no allegation that Stephen was present during or participated in any alleged "noise attacks." Further, defendants argued that "taken at face value, [p]laintiff does not establish that children practicing musical instruments, or playing outside in the fall, or water that is too hot, or an uncomfortably warm apartment or lack of cable TV is extreme and outrageous" conduct under Michigan law. After hearing argument, the trial court agreed and granted summary disposition in favor of defendants "[f]or the reasons stated by defendants."

This appeal followed.

## II. MOTION FOR LEAVE TO AMEND

Plaintiff argues that the trial court erred by denying his motion for leave to amend his complaint to add a claim for civil assault and battery. We disagree. We review for an abuse of discretion a trial court's decision on a motion to amend. *Decker v Rochowiak*, 287 Mich App 666, 681-682; 791 NW2d 507 (2010).

> Under MCR 2.118(A)(2), "a party may amend a pleading only by leave of the court . . . . Leave shall be freely given when justice so requires." Trial courts have discretion to grant or deny motions for leave to amend, but leave "should ordinarily be denied only for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *In re Kostin Estate*, 278 Mich App [47, 51; 748 NW2d 583 (2008)]. In regard to undue delay, "[d]elay, alone, does not warrant denial of a motion to amend. However, a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997) (citation omitted). Prejudice "exists if the amendment would prevent the opposing party from receiving a fair trial, if for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost." *Id*. at 659. [*Decker*, 287 Mich App at 681-682.]

In this case, the trial court denied plaintiff's proposed amendment after concluding that plaintiff had not demonstrated why he had delayed six months in seeking to amend his complaint to add a count for civil assault and battery. We agree. Plaintiff's counsel argued that he had only recently found a fact witness who allegedly would testify that Kimberly had orchestrated a

noise attack. However, plaintiff did not, and does not on appeal, explain why he was unable to add a claim for civil assault and battery until he located this witness. Plaintiff's original complaint already alleged that Kimberly had orchestrated children into performing "noise attacks" on plaintiff; plaintiff's addition of a new claim was based on a new legal theory of liability, not new facts. While our Supreme Court has held that "[d]elay, alone, does not warrant denial of a motion to amend," see *Weymers*, 454 Mich at 659, undue delay that results in prejudice to the opposing party warrants denial of a motion to amend, especially when a new claim or theory of recovery "on the basis of the same set of facts" as the original complaint is added without reasonable notice that the moving party would rely on the new claim or theory at trial. *Id*. at 659-660. We conclude that the trial court did not abuse its discretion by denying plaintiff's motion to amend his complaint. *Decker*, 287 Mich App at 681-682; further, we note that the record shows no support for plaintiff's argument that the trial court had imposed a bright-line rule concerning amendments after six months. Rather, the trial court merely noted the length of the delay as a factor in making its ruling.

### III. MOTION FOR SUMMARY DISPOSITION

Plaintiff also argues that the trial court erred by granting summary disposition in favor of defendants. We disagree.[3] This Court reviews de novo a trial court's ruling on a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher*, 300 Mich App at 139-140 (quotation marks and citations omitted).]

We review de novo the interpretation of contract language. See *Allstate Ins Co v McCarn (After Remand)*, 471 Mich 283, 288; 683 NW2d 656 (2004).

### A. BREACH OF CONTRACT CLAIMS

---

[3] The trial court did not specify in its order whether its grant of summary disposition was under MCR 2.116(C)(8) (failure to state a claim for which relief may be granted) or (C)(10) (no genuine issue of material fact). However, at the motion hearing, it stated that it found that "no genuine issue of fact" existed regarding plaintiff's claims; we therefore presume the trial court granted summary disposition under MCR 2.116(C)(10).

The trial court correctly dismissed Counts I-III against Kimberly and Watson because neither was a party to the residential lease agreement allegedly breached and plaintiff neither pled nor proved that they were acting as agents of Stephen. MCR 2.116(C)(8), (10), see also *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

The trial court also properly dismissed Counts I-III against Stephen. These counts alleged that Stephen, as lessor, had (1) breached Paragraph 6, the lease's covenant of quiet enjoyment; (2) breached Paragraph 18, the covenant in the lease providing that the lessor would provide "habitable heat and habitable water utilities;" and (3) breached Paragraph 18 by failing to provide cable TV under the lease. A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach. *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).

Leaseholders have a right to beneficial enjoyment of the leased property "for the purpose for which the premises are rented, at least to the extent disclosed to the lessor at the making of the lease." *Grinnell Bros v Asiuliewicz*, 241 Mich 186, 188; 216 NW 388 (1927). A breach of the covenant of quiet enjoyment occurs when a landlord "obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold." *Slatterly v Madiol*, 257 Mich App 242, 258; 668 NW2d 154 (2003). Here, plaintiff never demonstrated that Stephen substantially interfered with his household interest. Plaintiff alleged that he had been scalded by the water in his apartment on one occasion; however, the responding police officer found nothing wrong with the water temperature. Further, plaintiff never even pleaded that Stephen had caused the water temperature to be set to an unreasonable temperature, or had failed to remedy the issue when asked—the complaint alleges that Kimberly caused or chose to allow the water temperature to remain scalding, and alleges that Kimberly refused to remedy this condition. And although plaintiff asserted in the factual allegations of his complaint that "defendants" as a group had at some point caused the temperature in his apartment to rise to uncomfortable levels, plaintiff never pleaded or demonstrated that this substantially interfered with his household interest; further, on appeal, plaintiff focuses primarily on the water temperature issue and makes no specific reference to the heat issue. We conclude that the trial court did not err by dismissing Count I of the complaint against Stephen on the ground that plaintiff had not demonstrated that Stephen had breached the lease's covenant of quiet enjoyment. *Zaher*, 300 Mich App at 139-140.

Regarding Counts II and III, the language of Paragraph 18 makes it clear that it obligates the lessor to *pay for* the provision of certain utilities; plaintiff's complaints about the temperature of the heating and water do not constitute a breach of this particular provision. *Allstate Ins Co*, 471 Mich at 288. Moreover, plaintiff never alleged or showed any damages regarding the failure to provide cable television, or provided evidence to counter defendant's assertion that he had declined cable TV when offered it. We conclude that the trial court did not err by dismissing these counts against Stephen. *Zaher*, 300 Mich App at 139-140.

## B. IIED CLAIM

Plaintiff also argues that the trial court erred by dismissing his IIED claim against all defendants. We disagree. In granting summary disposition to defendants, the trial court stated:

Viewing the allegations and evidence in the light most favorable to the plaintiff, the Court finds no genuine issue of fact that the defendant's conduct, even in light of the plaintiff's expressed vulnerabilities rises to the—rises to the level of extreme and outrageous conduct. Plaintiff admits to a preexisting disability and preexisting special vulnerability to suffer "debilitating severe migraine and cluster headaches" related to exposure to "loud auditory shocks, disruptions, bright lights, certain foods, fumes and extreme temperatures."

Assuming that defendants knew of plaintiff's "special vulnerability" and with malicious and vicious intent caused or provoked elementary age children to engage in acts of extremely loud screaming or playing instruments for the purpose of annoying or disturbing plaintiff and assuming that numerous children of elementary school age did engage in intentional acts of screaming in the laundry room, playing instruments in the yard and other described acts as—such as peering into plaintiff's windows and making faces, the Court finds that reasonable minds would agree that those acts do not rise to the level of extreme outrageous conduct.

"Michigan courts have recognized that the common-law tort of intentional infliction of emotional distress vindicates a person's right to be free from serious, intentional and unprivileged invasions of mental and emotional tranquility." *Cotton v Banks*, 310 Mich App 104, 129; 872 NW2d 1 (2015). "To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Lucas v Awaad*, 299 Mich App 345, 359; 830 NW2d 141 (2013) (quotation marks and citation omitted). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. (quotation marks and citation omitted). "Accordingly, liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. (quotation marks, citation, and alteration omitted). "The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts of the case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citation omitted).

We agree with the trial court that, viewed in the light most favorable to plaintiff, the allegations that defendants allowed or encouraged children to make noise or play musical instruments, even with the hope (or at least, without concern) that this would trigger plaintiff's migraine condition, fail as a matter of law to reach the level of extreme or reckless conduct required to support an IIED claim. Although plaintiff argues at length that defendants were aware of his sensitivity, evidence of defendants' knowledge would primarily go to defendants' intent or recklessness, not to the outrageousness of the conduct itself. Although some jurisdictions have held that "[c]onduct which might otherwise be considered merely rude or

abusive may be deemed outrageous when the defendant knows that the plaintiff is particularly susceptible to emotional distress," see, e.g., *Roth v Wiese*, 271 Neb 750, 762; 716 NW2d 419 (Nebraska 2006),[4] Michigan has not applied such a rule. Moreover, even if plaintiff's particular susceptibility is considered, plaintiff's allegations that, in an apartment setting, he was subjected to the loud noises of children playing or yelling in public areas, simply do not rise to the level of IIED, even assuming that the children were acting as agents of defendants. Cases from other jurisdictions concerning the use of noise to inflict emotional distress support our conclusion. See, e.g., *Larijani v Georgetown Univ*, 791 A2d 41, 43-45 (D.C. Ct App, 2002) (holding that a question of fact existed regarding the outrageousness of the defendants' conduct when the plaintiff alleged that they had caused noisemakers to be placed in plaintiff's workspace that created a "loud, piercing, and unbearable" noise "every minute of every day" for nine months).

We also disagree with plaintiff's argument that the grant of summary disposition was premature. For the purposes of deciding defendant's motion, the trial court had assumed that plaintiff's allegations that defendants maliciously caused these "noise attacks," and that the attacks were "extremely loud," were true. We therefore conclude that further discovery would not have stood " a fair chance of uncovering factual support" for plaintiff's position. See *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 2334 (2009).[5]

Affirmed.

/s/ Mark T. Boonstra
/s/ Jonathan Tukel
/s/ Anica Letica

---

[4] The law of other jurisdiction is, of course, not binding on this Court, but may be considered as persuasive. See *People v Jamieson*, 436 Mich 61, 86–87; 461 NW2d 884 (1990).

[5] For the same reason, we also conclude that the trial court did not err by effectively denying plaintiff's motion to compel defendants to answer his interrogatories. Even if defendant's answers had revealed children willing to testify to defendants' role in these "noise attacks," it would not have affected the trial court's ruling on defendants' summary disposition motion. The trial court did not err by sparing defendants, and the children, undue burden or expense. See *Arabo v Mich Gaming Control Bd*, 310 Mich App 370, 398; 872 NW2d 223 (2015).