# STATE OF MICHIGAN

# COURT OF APPEALS

BRAD THOR,

      Plaintiff/Counterdefendant-
      Appellee,

v

BARRETT H. MOORE and MCMICHAEL
ROAD, LLC,

      Defendants/Counterplaintiffs-
      Appellants.

UNPUBLISHED
June 26, 2018

No. 332813
Cheboygan Circuit Court
LC No. 14-008472-CZ

Before: MURRAY, C.J., and HOEKSTRA and GADOLA, JJ.

PER CURIAM.

Defendants-counterplaintiffs[1] Barrett H. Moore and McMichael Road, LLC[2] appeal as of right the trial court orders: (1) partially granting plaintiff-counterdefendant[3] Brad Thor's motion for summary disposition on October 2, 2015; (2) denying their motion to file a second amended countercomplaint on November 2, 2015; (3) denying their motion for reconsideration of a previously imposed discovery deadline on September 25, 2015; and (4) granting Thor's motion for a directed verdict. For the reasons stated herein, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of a friendship and business relationship between Thor and Moore that turned sour. The two met and were friends from approximately 2008 to 2013, during which time Thor invested in a facility being developed by defendants to serve as a safe haven during periods of emergency. Further, Moore, a former member of the military with knowledge of the

---

[1] We will refer to Moore and McMichael Road, LLC collectively as defendants, and individually as Moore and McMichael.

[2] McMichael is an LLC controlled by Moore.

[3] We will refer to plaintiff-counterdefendant as Thor.

-1-

intelligence community, provided his expertise in those areas to Thor, a well-known author of political spy thrillers.

On July 31, 2014, Thor filed a complaint against defendants in the Cheboygan Circuit Court, alleging several claims related to the safe haven project and various other business dealings, which defendants answered on September 15, 2014. The trial court then entered its scheduling order for the matter on November 24, 2014, setting the settlement conference for March 25, 2015, and ordering that discovery be completed within 120 days of the scheduling order.

Thor amended his complaint on December 8, 2014, but rather than filing an answer, defendants filed a motion to strike the amended complaint on December 29, 2014, asserting that Thor added claims beyond the scope permitted by the court at the pretrial conference. As a result of defendants' failure to answer Thor's first amended complaint, the court entered a default against defendants on March 9, 2015. In response, defendants filed an addendum to their supplement of the motion to strike on March 10, 2015, a motion to amend the pretrial conference summary order on March 23, 2015, requesting that the court set new discovery deadlines and announcing their intent to file a countercomplaint against Thor upon resolution of the motion to strike, and a motion to set aside the default on March 30, 2015. At a hearing on April 13, 2015, the trial court found good cause to set aside the default, but denied defendants' motion to strike Thor's first amended complaint because defendants failed to file the new motion as ordered by the court. Further, pursuant to defendants' request, the court extended the discovery deadline to May 24, 2015, and the settlement conference to a date in June.

On April 20, 2015, defendants answered Thor's first amended complaint, and filed their own countercomplaint against Thor. Defendants then filed their first amended countercomplaint on May 12, 2015, alleging generally that Moore served as a source of content for a number of Thor's novels, and provided business advice to Thor regarding the negotiation of his publishing contract with Simon & Schuster. In Count I, defendants claimed that Thor breached a contract with McMichael. In Count II, defendants claimed that for Moore's assistance and business advice, "Thor agreed to pay Moore 5% of his income from the books, and from the increase in his contract with Simon [&] Schuster," and that Thor breached this contract. Attached to defendants' first amended countercomplaint were several acknowledgements sections for Thor's books thanking Moore and others for their help, as well as two e-mails purportedly sent in September 2011. The first e-mail, from Thor to Moore dated September 19, 2011, states, in part: "Team Thor is here for Team Moore. Anything you need, anytime – you just pick up the phone." The second e-mail, from Moore to Thor dated September 20, 2011, states, in pertinent part:

[I]n regards to your offer of compensation for the book work, I am not looking for anything, but your 5% offer is very generous and I agree we should put those 'earned' dollars toward the project. I am so grateful for your financial support as it has been instrumental in keeping CNB at bay, and ensuring the facility can be retained and converted to agricultural use. These extra dollars will make sure it remains equipped and ready. Lets [sic] work off the loan first and then you can whittle away at the 'wanted' list based on whatever dollars you deem to have been earned. I am just so pleased to be able to help you and your team as well.

On August 31, 2015, Thor filed a motion for summary disposition of defendants' first amended countercomplaint pursuant to MCR 2.116(C)(7), (8), and (10),[4] requesting dismissal of both Count I related to McMichael, and Count II involving Moore's breach of contract claim. With regard to Moore's breach of contract claim, Thor argued that the e-mails attached to defendants' first amended countercomplaint purportedly proving the existence of an agreement are inadmissible hearsay, and demonstrate that Moore never actually accepted any alleged 5% offer. Thus, Thor asserted, defendants failed to establish a genuine issue of material fact that a contract existed with a valid offer and acceptance. Thor also argued that, looking to the contract terms defendant alleged, any oral agreement for 5% of his book income would be barred by the statute of frauds because it could not be performed within one year – an author receives royalties for the length of that author's copyright.

In response to Thor's motion for summary disposition, defendants argued that the agreement between Thor and Moore never involved the payment of royalties, and that contrary to Thor's argument, Moore did accept Thor's offer of 5%. Further, defendants asserted, the statute of frauds did not void the agreement because each of the books Moore assisted in writing were written and published within one year.

Ultimately, the trial court granted Thor's motion for summary disposition on the record with regard to Count I, the McMichael breach of contract claim, but only partially granted the motion for summary disposition with regard to Moore's breach of contract claim. Specifically, the trial court dismissed Moore's claim for 5% of Thor's book income because any such agreement would be incapable of performance within a year, thus violating the statute of frauds, but denied summary disposition with regard to Moore's claim for 5% of the increase in Thor's contract with Simon & Schuster because the issue was not properly briefed.

Following the court's decision on Thor's motion for summary disposition, defendants filed a motion for leave to file a second amended countercomplaint on October 26, 2015, requesting permission to allege quasi contract, unjust enrichment, and implied contract with regard to McMichael's claim, and quasi contract, unjust enrichment, implied contract, and equitable estoppel with regard to Moore's claim. At the hearing on November 2, 2015, the trial court denied the motion, stating:

> I think we're close to trial, and this would open up a whole new area of discovery for the parties to explore and compute potential damages. It just wouldn't be fair to say we're going to shift gears and cause these parties to do this, and I also take into consideration -- I still don't understand why if Mr. Moore had this contract or agreement with Mr. Thor, why it wasn't injected into this case until April. I don't understand that.

* * *

---

[4] The motion itself listed only MCR 2.116(C)(7) and (8), but the brief in support listed the standards of review for summary disposition motions filed under MCR 2.116(C)(7), (8), and (10).

[I]t's just unfair to say that one party can just keep throwing things up in the air, and we'll see what we can make fly here, and now on this late date without this history, maybe the motion would be in a different posture, but I have to look at the entire history of the case, and I think it would cause undue prejudice and that the amount of damages and the computation of damages would not be a different computation, and we're fairly close to trial, and it's just not fair to the other side to say they're going to have to prepare for that at trial.

The case then proceeded to a jury trial on defendants' one remaining claim: that Thor breached an agreement to pay Moore 5% of the increase in his publishing contract with Simon & Schuster, in exchange for Moore's business and negotiation advice. At the close of the second day of trial, Thor filed a motion for a directed verdict asserting that Moore's breach of contract claim was barred by the statute of frauds, which the court heard on April 13, 2016, the second day of trial. In response to Thor's argument, defendants' counsel maintained that the agreement could have been performed within one year because Moore began fulfilling his portion of the agreement on September 17, 2011, and Thor signed his increased publishing contract in August 2012. Thus, counsel asserted, Thor owed Moore 5% of the $4 million dollar difference between the 2012 contract, and Thor's previous contract, on the day the 2012 contract was executed. Ultimately, the trial court granted Thor's motion for a directed verdict, ruling that (1) the terms of the supposed agreement were too vague to be enforceable; (2) the agreement violated the statute of frauds; (3) defendants offered insufficient evidence of consideration; and (4) reasonable minds could not find that defendants met the burden of proof to enforce the agreement.

## II. ANALYSIS

## A. SUMMARY DISPOSITION

Defendants first argue that the trial court erred when it granted summary disposition of their claim that Thor agreed to pay Moore 5% of his income from the books Moore contributed to. Specifically, they assert that the e-mails establishing the existence of an agreement are not inadmissible hearsay, Moore clearly accepted Thor's offer, and the agreement is not void under the statute of frauds.

We review a trial court's decision on a motion for summary disposition de novo. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432-433; 824 NW2d 318 (2012). Summary disposition is proper under MCR 2.116(C)(7) when a claim is barred by the statute of frauds. MCR 2.116(C)(7). When reviewing such a motion, we must accept all well-pleaded allegations as true, and construe those allegations in the plaintiff's favor. *Marrero v McDonnell Douglas Capital Corp*, 200 Mich App 438, 440-441; 505 NW2d 275 (1993). Further, "a court must consider *all* affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted by the parties." *Id*. at 441. When "no [material] facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts," the motion should be granted. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006) (quotation marks and citations omitted; alteration in original).

"A motion under MCR 2.116(C)(10) tests the factual basis underlying the plaintiff's claim." *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). A court

may grant a motion for summary disposition pursuant to MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "[A] genuine issue of material fact exists when, viewing the evidence in a light most favorable to the nonmoving party, the 'record which might be developed . . . would leave open an issue upon which reasonable minds might differ." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citations omitted). To review a motion under MCR 2.116(C)(10), this Court considers " 'the pleadings, admissions, affidavits, and other relevant documentary evidence of record . . . .' " *Maple Grove Twp v Misteguay Creek Intercounty Drain Bd*, 298 Mich App 200, 206-207; 828 NW2d 459 (2012), quoting *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). " 'The moving party has the initial burden of supporting its position with documentary evidence, but once the moving party meets its burden, the burden shifts to the nonmoving party to establish that a genuine issue of disputed fact exists.' " *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 15; 891 NW2d 528 (2016) (quotation marks and citations omitted); see also MCR 2.116(G)(4).

We also review de novo whether the statute of frauds bars enforcement of a contract, *Zander v Ogihara Corp*, 213 Mich App 438, 441; 540 NW2d 702 (1995), and the existence and interpretation of a contract, *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

The trial court did not err when it granted summary disposition of defendants' claim that Thor breached an agreement to pay Moore 5% of his income from the books Moore contributed to. Defendants failed to establish a genuine issue of material fact that such a contract existed.

For a successful breach of contract claim, a plaintiff must prove that a contract existed, that the other party breached the contract, and that the breach resulted in damages. *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id*. at 101 (quotation marks and citation omitted). Further, for a contract to be complete there must be an offer and acceptance as well as "a meeting of the minds on all the essential terms." *Kloian*, 273 Mich App at 452-453.

"An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id*. at 453 (quotation marks and citations omitted). An acceptance, on the other hand, " 'arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose.' " *Id*. at 453-454, quoting *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 626-627; 692 NW2d 388 (2004) (quotation marks and citations omitted). " 'Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed.' " *Kloian*, 273 Mich App at 452-453 (citation omitted). Additionally, "[a] meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. at 454 (quotation marks and citations omitted).

In response to Thor's answer to the first amended countercomplaint denying that he offered Moore 5% of the income from his books, and motion for summary disposition challenging the existence of the alleged agreement, defendants offered no evidence of Thor's purported offer beyond the September 2011 e-mails attached to the first amended countercomplaint. Nowhere in Moore's affidavit, attached to defendants' response to the motion for summary disposition, does he say when, where, or how Thor made such an offer, or whether the offer was made orally or in writing.[5]

Moreover, Moore presented insufficient evidence that he unambiguously accepted the alleged 5% book income offer so as to form a valid contract. The September 20, 2011 e-mail he refers to in support of his claims demonstrates a reluctance on Moore's part to accept any offer of compensation, and makes no reference to book income specifically (the offer Thor supposedly made), stating, in part:

> [I]n regards to your offer of compensation for the book work, I am not looking for anything, but your 5% offer is very generous and I agree we should put those 'earned' dollars toward the project. I am so grateful for your financial support as it has been instrumental in keeping CNB at bay, and ensuring the facility can be retained and converted to agricultural use. These extra dollars will make sure it remains equipped and ready. Lets [sic] work off the loan first and then you can whittle away at the 'wanted' list based on whatever dollars you deem to have been earned.

Moore also expressed his reluctance to accept any offer of compensation for his book writing assistance in his affidavit, stating, "In respect to the September 20, 2011 e[-]mail, at the time, I never envisioned getting a check from Brad, per se, but rather looked at the 5% of dollars earned that would help with equipping the facility in Michigan," and "[a]s I stated in my September 20, 2011 e[-]mail: 'I am not looking for anything,' which is a true statement. I did not want anything for helping my friend write a better book, however because the financially difficult times I had been experiencing, Brad's financial contributions made a big difference to pushing our haven project forward."

Based on the foregoing, then, defendants presented insufficient evidence of any offer by Thor to pay Moore 5% of his book income, or of an unambiguous acceptance in strict conformance with such an offer. Thus, no genuine issue of material fact existed that Thor and Moore formed a contract at all, and summary disposition was appropriate.[6]

---

[5] The trial court addressed this deficiency with defendants' counsel at the summary disposition motion hearing, who responded that the September 2011 "acceptance" e-mail and the allegations in the countercomplaint adopted in Moore's affidavit served as evidence that Thor made an offer. As described above, we disagree.

[6] We recognize that the trial court did not grant summary disposition of defendants' claim on this basis, but this Court may affirm the trial court's correct result based on different reasoning. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 449; 886 NW2d 445 (2015).

B.  LEAVE TO AMEND

Defendants next argue that even if the statute of frauds does apply to the agreement between Thor and Moore, Thor is not entitled to summary disposition because Moore performed his side of the agreement, and failing to enforce the contract would be inequitable.  Thus, they assert, "Moore should have been permitted to file a Second Amended Complaint to allege quasi contract, unjust enrichment, implied contract, and Equity estoppel."  Further, defendants contend that the trial court also erred by denying the motion to amend Count I of the first amended countercomplaint involving McMichael.

We review for an abuse of discretion a trial court's decision regarding a motion to amend pleadings.  *Sanders v Perfecting Church*, 303 Mich App 1, 8-9; 840 NW2d 401 (2013).  "An abuse of discretion occurs when the decision results in an outcome that falls outside the range of principled outcomes."  *Decker v Rochowiak*, 287 Mich App 666, 681; 791 NW2d 507 (2010).  However, leave to amend pleadings "shall be freely given when justice so requires."  MCR 2.118(A)(2).  In other words, "amendment is generally a matter of right rather than of grace."  *In re Kostin*, 278 Mich App 47, 52; 748 NW2d 583 (2008).

In support of their argument, defendants first assert, citing a number of cases, that a trial court must deny summary disposition and allow a plaintiff leave to amend pleadings for the inclusion of equitable theories of relief, when the statute of frauds renders a contract unenforceable.  Thus, they maintain, the trial court erred when it denied Moore's request to file a second amended countercomplaint alleging quasi contract, implied contract, unjust enrichment, and equitable estoppel.  This argument fails.  Although many of the cases cited by defendants opine that equitable relief may be available when an agreement is otherwise void under the statute of frauds, see, e.g., *Biagini v Mocnik*, 369 Mich 657, 658-660; 120 NW2d 827 (1963); *Lovely v Dierkes*, 132 Mich App 485, 488-489; 347 NW2d 752 (1984), defendant points to no language in those cases, and we find none, requiring courts to grant leave to amend under such circumstances.[7]

Defendants' argument that the trial court had no valid reason for denying their request to amend Moore's claim also lacks merit.[8]  Leave to amend " 'should ordinarily be denied only for

---

[7] Further, this Court has questioned the use of equitable estoppel to avoid the nullification of oral agreements under the statute of frauds, stating: "We . . . question the wisdom of such judicially created exceptions to the statute of frauds as equitable estoppel, ratification, and part performance.  Rather than deferring to the Legislature to address through the legislative amendment process any perceived inequity in the statute of frauds, Michigan courts have by judicial fiat created gaping holes in the statute of frauds that are inconsistent with the express language of the statute and the policy supporting it[.]"  *Kelly-Stehney & Assoc, Inc v MacDonald's Indus Prod, Inc*, 254 Mich App 608, 613-616; 658 NW2d 494 (2003), vacated on other grounds 469 Mich 1046 (2004).

[8] Defendants' argument with regard to the potential reasons a court may deny a motion to amend is cursory at best.

particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility.' " *Decker*, 287 Mich App at 681-682, quoting *In re Kostin*, 278 Mich App at 52. The trial court correctly concluded that defendants' requested amendment would result in undue delay and prejudice to Thor. And in combination with the futility of defendants' proposed amendments, the trial court properly denied defendants' motion to file a second amended countercomplaint.[9]

Delay, " 'alone, does not warrant denial of a motion to amend. However, a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result.' " *Decker*, 287 Mich App at 682 (citation omitted). "Prejudice 'exists if the amendment would prevent the opposing party from receiving a fair trial, if for example, the opposing party would not be able to properly contest the matter raised in the amendment . . . .' " *Id.* (citation omitted). Further, "a trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial." *Weymers v Khera*, 454 Mich 639, 659-660; 563 NW2d 647 (1997). Beyond waiting nearly nine months after the commencement of the litigation to file their initial countercomplaint, based on facts known to defendants well before Thor filed his initial complaint, and requesting multiple discovery extensions, defendants failed to request leave to add four equitable theories of relief to Moore's claim until well after discovery deadlines had passed.[10]

Moreover, the requested amendments would have been futile.[11] Although "[a]n implied-in-law contract[12] is a legal fiction to enable justice be accomplished even if there was no meeting of the minds and no contract was intended," *AFT Mich v Michigan*, 303 Mich App 651, 660-661; 846 NW2d 583 (2014), aff'd 497 Mich 197 (2015) (quotation marks and citation omitted), "[a]n implied contract must [still] satisfy the elements of mutual assent and consideration," *Mallory v Detroit*, 181 Mich App 121, 127; 449 NW2d 115 (1989). Further, equitable estoppel requires that one party intentionally induce another to believe facts. *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 527; 644 NW2d 765 (2002). As the trial court correctly concluded that defendants presented insufficient evidence at summary disposition to create a genuine issue of material fact regarding whether Thor offered Moore 5% of his book income in exchange for assistance, defendants are not entitled to equitable relief.

---

[9] Although the trial court did not examine futility, "[t]his Court . . . will not reverse when a trial court reaches the right result" for a different reason. *Neville v Neville*, 295 Mich App 460, 470; 812 NW2d 816 (2012).

[10] Defendants' assertion that they had to wait until the court ruled on their motion to strike Thor's first amended complaint to file their own countercomplaint is nonsensical.

[11] In their brief on appeal, defendants include no analysis of the equitable claims they wished to add to the countercomplaint.

[12] "A contract will be implied in law to prevent unjust enrichment." *AFT Mich v Michigan*, 303 Mich App 651, 660; 846 NW2d 583 (2014), aff'd 497 Mich 197 (2015).

Finally, defendants also argue that the court erred when it denied the request to amend their countercomplaint with regard to McMichael's breach of contract claim, but in support, defendants only cursorily assert that when no contract exists, courts employ quasi contract to justify payment. Thus, defendants failed to adequately brief this argument for appellate review. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Houghton v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted).

## C. DISCOVERY REQUEST

Defendants next argue that the trial court erred when it denied their fifth set of discovery requests. On June 1, 2015, defendants filed a motion for adjournment, requesting that the trial court extend the discovery deadline from May 24, 2015, to August 17, 2015, because defendants' counsel had begun experiencing serious health issues at the end of April. The trial court initially denied the motion, effectively striking the fourth discovery request served by defendants on May 26, 2015, but following a motion for reconsideration, allowed defendants to revise and re-serve their fourth discovery request. When defendants served Thor an expanded fifth discovery request in violation of the court's order, the court held a telephone conference to resolve the matter on August 31, 2015, and rejected the fifth discovery request. In an attempt to challenge that decision, defendants filed a motion for reconsideration, which the trial court denied.

"This Court reviews a trial court's decision to grant or deny a discovery request for an abuse of discretion." *Chastain v Gen Motors Corp (On Remand)*, 254 Mich App 576, 593; 657 NW2d 804 (2002). As stated by this Court in *Hamed v Wayne Co*, 271 Mich App 106, 109-110; 719 NW2d 612 (2006):

> Michigan has long espoused a liberal discovery policy that permits the discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case. MCR 2.302(B)(1); *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). The purpose of discovery is to simplify and clarify the contested issues, which is necessarily accomplished by the open discovery of all relevant facts and circumstances related to the controversy. See *id.*, citing *Domako v Rowe*, 438 Mich 347, 360; 475 NW2d 30 (1991). However, the court rules also ensure that discovery requests are fair and legitimate by providing that discovery may be circumscribed to prevent excessive, abusive, irrelevant, or unduly burdensome requests. MCR 2.302(C); *Cabrera v Ekema*, 265 Mich App 402, 407; 695 NW2d 78 (2005); *In re Hammond Estate*, 215 Mich App 379, 386; 547 NW2d 36 (1996).

Contrary to defendants' arguments, their own decisions, rather than the trial court's bias, prevented them from conducting discovery in a timely manner. They chose, for example, not to file their initial countercomplaint until nearly nine months after litigation began, despite having knowledge of the necessary facts when Thor initially filed his complaint, and neither their motion to strike nor the default against them affected their ability to move forward with their own claims. Still, the trial court extended discovery to May 24, 2015, and allowed defendants to re-file their fourth discovery request despite the late service to Thor on May 26, 2015. Further,

-9-

when defendants failed to follow the court's instruction to narrow their fourth discovery request, and instead filed an even broader fifth discovery request, the court still ordered that Thor answer defendants' original discovery request.

Moreover, defendants have failed to demonstrate any prejudice resulting from the court's decision. They cursorily argue on appeal that answers to the fifth discovery request were necessary to properly prepare for trial because "Moore could not prove the dollar amount the 5% produces without information from Thor," but as discussed in detail below, the trial court correctly granted Thor's motion for a directed verdict of Moore's claims. Thus, any calculation of damages is unnecessary. Accordingly, we conclude that the court did not abuse its discretion by denying defendants' fifth discovery request.

## D. DIRECTED VERDICT

Finally, defendants argue that the trial court erred when it granted Thor's motion for a directed verdict on their claim that Thor breached an agreement to pay Moore 5% of the increase in his publishing contract with Simon & Schuster. "[D]ecisions on a motion for directed verdict are reviewed de novo . . . ." *Chelik v Capitol Transp, LLC*, 313 Mich App 83, 88; 880 NW2d 350 (2015). "When deciding a motion for directed verdict, the evidence and legitimate inferences are reviewed in the light most favorable to the nonmoving party." *Id*. at 88-89. This Court also reviews de novo whether the statute of frauds bars enforcement of a contract, *Zander*, 213 Mich App at 441, and the existence and interpretation of a contract, *Kloian*, 273 Mich App at 452.

"A directed verdict is appropriately granted only when no factual questions exist on which reasonable jurors could differ." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441, 446; 844 NW2d 727 (2013), aff'd 497 Mich 337 (2015) (quotation marks and citation omitted). "If . . . the evidence is insufficient to establish a prima facie case, then the motion should be granted, since reasonable persons would agree that there is an essential failure of proof." *Zander*, 213 Mich App at 441 (quotation marks and citation omitted). Here, defendants failed to present sufficient evidence that a valid contract or agreement ever existed between Moore and Thor, an essential element of breach of contract.

Again, for a successful breach of contract claim, a plaintiff must prove that a contract existed, the other party breached the contract, and the breach resulted in damages. *Bank of America, NA*, 499 Mich at 100. "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id*. at 101 (quotation marks and citation omitted). Mutual assent requires a meeting of the minds on all of the essential terms of the contract, *Kloian*, 273 Mich App at 453, and consideration is a "bargained-for exchange – 'a benefit on one side, or a detriment suffered, or service done on the other,' " *Bank of America, NA*, 499 Mich at 101, quoting *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 239; 644 NW2d 734 (2002). Further, " '[b]efore a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed.' " *Kloian*, 273 Mich App at 452-453 (citation omitted).

As demonstrated by the lack of proof regarding the essential terms of the contract – how the parties intended to calculate the "increase" in Thor's publishing contract, the services to be rendered by Moore in exchange, or when payment would be due, insufficient evidence existed that Thor offered the alleged payment, Moore accepted the offer, and the parties assented to the essential terms of the agreement. At trial, Moore testified that Thor made him the offer at a lunch on September 17, 2011, and that Thor signed his new contract with Simon & Schuster in August 2012, but never testified regarding when payment by Thor would be due (at the execution of the contract, or when Thor himself received the funds from the publishing company),[13] and in what amount. Further, Moore provided an indefinite timeline for when he supposedly rendered business and negotiation advice to Thor, and limited evidence regarding whether Thor ever used this advice in his contract negotiations. In fact, Moore admitted that he never saw copies of Thor's contracts, or directly negotiated with anyone at Simon & Schuster, and Thor testified that he had a literary agent, to whom he paid 15% of his income for negotiating his publishing deals, and that Moore never spoke with the agent. From this evidence, no reasonable jury could conclude that a valid agreement existed between Thor and Moore with a proper offer and acceptance, consideration, and mutuality of agreement, and the trial court properly granted Thor's motion for a directed verdict.[14]

Affirmed.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Michael F. Gadola

---

[13] During the argument on Thor's motion for a directed verdict, defendants' counsel asserted that payment was due when the agreement was executed, and that Thor owed Moore $200,000 which is 5% of the $4 million dollar increase between Thor's 2010 and 2012 contracts with Simon & Schuster, but defendants presented no testimony or other evidence at trial to support these assertions.

[14] As we have concluded defendants failed to present sufficient evidence of a valid agreement, we need not consider whether a directed verdict was proper because any oral agreement between the parties would have violated the statute of frauds.